295 P.2d 1028

Edgar D. OTTO, Patrick H. Hill, Thomas Morris, John Augustine, W. E. Kistler, and Peter Brooks, Petitioners,

v.

Natalie Smith BUCK, Secretary of State of the State of New Mexico, and Richard H. Robinson, Attorney General of the State of New Mexico, Respondents.

No. 6005.

Supreme Court of New Mexico.

April 3, 1956.

124

Hannett, Hannett & Cornish, Albuquerque, for petitioners.

Richard H. Robinson, Atty. Gen., Fred M. Standley and Walter R. Kegel, Asst. Attys. Gen., for respondents.

LUJAN, Justice.

The petitioners seek a writ of mandamus from this Court directing the respondents, the Secretary of State and the Attorney General, to approve, accept and file a petition signed and sponsored by petitioners for the calling of a referendum election upon Chapter 37, Laws of 1955, under the provisions of Art. IV, § 1 of our Constitution, which sets forth, among other things:

> "The people reserve the power to disapprove, suspend and annul any law enacted by the legislature, except general appropriation laws; laws providing for the preservation of the public peace, health or safety; for the payment of the public debt or interest thereon, or the creation or funding of the same, except as in this Constitution otherwise provided; for the maintenance of the public schools or state institutions, and local or special laws."

Chapter 37, Laws of 1955, is an act regulating the size and weight of vehicles upon the highways of this state which repealed earlier enactments, § 64–23–1 to § 64–23–11, inclusive, N.M.S.A.1953, and, in addition to other matters, liberalized in certain particulars the permissive size and allowable weight limits of vehicles, length of load and permissive vehicle combinations, providing violations of the act shall be misdemeanors punishable by fine of not less than $25 nor more than $100, which sums under Art. XII, § 4 of the Constitution become part of the current school fund.

By opinion No. 6268, August 31, 1955, the Attorney General advised the Secretary of State that the enactment in question was not subject to referendum upon the grounds that it is a law providing for the preservation of the public peace, health or safety and one, as well, for the maintenance of the public schools or state institutions. Acting thereunder, the Secretary of State refused to refer the act or to approve or originate a popular name therefor and the Attorney General refused to approve the instructions to canvassers and petition signers.

Petitioners and respondents entered into a stipulation providing the following are the only pertinent points of law involved in this litigation:

A. That Chapter 37 of the Laws of 1955 is a law providing for the preservation of the public peace, health, or safety, being an enactment under the police power of the State of New Mexico.

B. That said law is for the maintenance of public schools.

C. That said law is for the maintenance of state institutions, to-wit: the public roads of the State of New Mexico and the Highway Department of the State of New Mexico.

D. That for the purpose of the briefs on the legal defenses, no question of fact is material nor should any be offered but questions purely of law are submitted in the briefs. Respondents reserve, subject to the order of the Court, the right to contest the facts presented by Petitioners' Petition for Writ.

The case is so submitted to us, with petitioners arguing the negative of these propositions and respondents the affirmative.

We will first consider the proposition whether Ch. 37, Laws of 1955, is a measure providing for the preservation of the public peace, health or safety and thereby excepted from the reserved power of referendum. However, before entering upon a discussion of the act itself and the conflicting contentions of the parties, it seems necessary to clarify the character of the question involved in determining whether the act is referable and to set forth the matters at which this Court will look in ar-

riving at its decision, for, as noted in paragraph "D" of the stipulation of parties set out above, these considerations are the subject of some dispute.

In this connection petitioners assert whether the act provides for the preservation of public peace, health or safety under Art. IV, § 1, of the New Mexico Constitution, is a question of fact and that this Court should take and consider all pertinent evidence offered. In support of this assertion they point to our decision in State ex rel. Hughes v. Cleveland, 47 N.M. 230, 235, 141 P.2d 192, 195, saying it is there held that this Court could and would take judicial notice of facts establishing an emergency in the matter of providing revenues for old age assistance. The language of the opinion on that point, which passed upon the referable character of an act imposing a tax on cigars and cigarettes and allocating the proceeds therefrom to old age assistance funds, is as follows:

"We may and should assume that the Legislature in enacting the questioned measure was moved, in part, by an anticipated large decrease in revenues available for this type of assistance, as pointed out by the State's Chief Executive, the Honorable John J. Dempsey, in a message read personally before a joint meeting of the House and Senate on February 4, 1943, while the bill was under consideration by the Legislature. * * *

"That the conditions pointed out in the message of the Chief Executive as well as in the report of the special legislative committee form the background of the legislative finding of urgent need appearing in the preamble, we entertain no doubt. Presumably the Legislature through appropriate committees or otherwise, satisfied itself of the accuracy of the conditions brought to its attention by the Governor. It was its duty so to do and we may assume it did. State ex rel. Short v. Hinkle, 116 Wash. 1, 198 P. 535. Our right, if not our duty, to notice judicially the message of the Governor before the joint session of both houses of the Legislature convened to receive the same cannot be considered doubtful in view of the governing rule to be found in 1941 Comp., § 19–101, Rule 44(d) (3) [Our present § 21–1–1(44) (d) (3), NMSA, 1953]. See also 20 Am.Jur. 67, § 44 'Evidence'. Likewise the right to notice judicially the report of the legislative committee appears supported by reason as well as authority. 20 Am. Jur. 64, § 41 'Evidence'; State [ex rel. Garrett] v. Torbert, 200 Ala. 663, 77 So. 37; State [ex rel. Tolerton] v. Gordon, 236 Mo. 142, 139 S.W. 403." (Reference to NMSA, 1953, supplied.)

It is at once apparent that in the Cleveland case we took judicial notice not of the facts establishing the emergency, as petitioners contend, but of the Governor's

message and the report of the special legislative committee. This distinction is significant because it indicates the limitations upon the inquiry to be made by us in such matters. We did not there go behind the message and report and take testimony to determine whether or not an emergency existed. The opinion states, and correctly so, that such inquiry is the duty of the legislature and this Court would assume the duty had been discharged. We said the question to be determined was whether the act reasonably provided for the preservation of the public peace, health or safety and that the consideration was complete upon the determination whether a valid relationship existed between the enactment and the preservation of either the public peace, health or safety.

■ It is generally agreed that these questions are factual in the sense that a legislature may not, by declaring that a given act is for the preservation of these public goods, foreclose a determination by the courts whether in fact it is such. Annotation 146 A.L.R. 285, at page 288, citing State ex rel. Goodman v. Stewart, 1920, 57 Mont. 144, 187 P. 641; State ex rel. Veeder v. State Board of Education, 1934, 97 Mont. 121, 33 P.2d 516; see also, 28 Am.Jur. "Initiative, Referendum, and Recall" (Cum.Pocket Part) § 10, p. 65. But, by this is it meant that the question is one of "raw" fact? We think not, and we do not believe the authorities relied upon so hold. Instead, the question should be termed one of "judicial" fact, in the sense that this forum examines the enactment of the legislature in the light of the history of the provision, including therein previous extant or repealed legislation on the subject; contemporaneous declarations of the legislature; the condition sought to be remedied by the act, as reflected by the enactment and in other matters of which we may properly take judicial notice; and the consequences of any particular interpretation to be given the enactment. Stated most tersely, our work begins where that of the legislature left off.

Within this sphere we proceed to the merits of petitioners' contention that Ch. 37, Laws of 1955, is not a measure providing for the preservation of the public peace, health or safety and is subject to referendum.

The main argument of petitioners may be said to be that the act does not make provision for the *preservation* of public peace, health or safety, in that earlier statutes which it repealed met the regulatory need more adequately than does the present act. Under this argument are made the supporting contentions that the word "preservation" presupposes a real or existing danger or threat to public peace, health or safety against which protection is sought; that when the legislature has already spoken in the field, a subsequent statute which merely revises the existing regulatory measures cannot be said to be an act for the preservation of public peace,

health or safety; and, lastly, that provisions reserving to the people the power of referendum should be given a liberal construction with any doubts resolved in favor of the referral of the enactment.

Petitioners set forth numerous changes made under Ch. 37, Laws of 1955, the new act, from the old act contained in §§ 64–23–1 to 64–23–11, inclusive, N.M.S.A.1953. Summarized, these changes are:

(1) Increasing permissive vehicle width from eight feet to eight feet, six inches, measured from the outside of one wheel and tire to the outside of the opposite wheel and tire, regardless of the width or condition of the highway.

(2) Increasing allowable height of vehicles from twelve feet, six inches, to thirteen feet, six inches.

(3) Permitting load extension three feet beyond the vehicle front and still retaining the old permissive rear load extension of seven feet.

(4) Increasing permissive vehicle combinations from two to three, i. e., a truck-tractor may pull a semi-trailer and a full trailer, although the old length limitation of 65 feet is retained.

(5) Extension of twenty percent increase in load limits to vehicles not granted such additional load tolerance under the old law.

(6) Provision permitting the Highway Commission to issue permits for a fee of $10.00 allowing vehicles or vehicle combinations to operate for one year with heights, weights and widths in excess of the maximum allowance, without the requirement that an emergency exist or that the permits specify routes and loads allowable as under the old law.

(7) Removing from the jurisdiction of the Highway Commission authority to post load limits restricting traffic over bridges and other structures on rural roads, without granting this authority to any other agency.

(8) Failure to require an increase in braking or power equipment on vehicles.

We need not, and should not, rule in this case that petitioners have correctly appraised the legal meaning of the changes wrought by the new act, for these matters might themselves become the subject of dispute in future cases. But, for the purposes of the present determination, we accept petitioners' assessment of such changes.

■ The argument of respondents is grounded upon our holding in State ex rel. Hughes v. Cleveland, supra. They first point out the studied omission by the framers of our Constitution of the words "necessary" and "immediate" in the language of the exemption clause: "except * * * laws providing for the preservation of the public peace, health or safety", the result of which omission is to allow the people of this state a much narrower right of referendum than is allowed in any other

state in which the right is reserved. See discussion in State ex rel. Hughes v. Cleveland, 47 N.M. at pp. 236, 237, 141 P.2d 192. On the basis of this difference in our Constitution, and as declared in the Cleveland case, cases from other jurisdictions declaring the referable character of acts challenged under this type of exemption can be of little aid here, "For, it must be obvious to all that many laws could reasonably provide for the preservation of the public peace, health or safety, without being deemed *necessary* for their *immediate* preservation."

Respondents' argument then proceeds to another ruling in the Cleveland case, that no crisis or emergency need exist before the non-referable character of the act is found, but that "All that is required to bring the questioned law within the proper sphere for an exercise of the police power is that it bear a valid relationship, as we have expressed it, to some permissible object for the exercise of that power."

The correctness of these holdings is unassailable as is the further holding in that case, here paraphrased, "The fact that a measure does not affect all or even a major portion of the people of the States does not deny it character as [a measure providing for preservation of public peace, health or safety]."

The Cleveland decision also declared that if the constitutional validity of legislation be sustained as a reasonable exercise of police power involved in the referendum clause of the Constitution, its non-referable character is automatically established under the provision exempting from popular referendum measures providing for the preservation of public peace, health or safety. While it was doubtless never intended that this declaration be lifted from its context and applied as a rule of thumb, still the persuasiveness of the comparison made and the conclusion reached are as strong today as then, although perhaps it should be pointed out that this Court is not insensitive to the difference in the canons of construction to be applied in each instance, foremost of which is the strong presumption in favor of constitutional validity which attaches to legislative enactments, whereas provisions for referendum are to be liberally construed in favor thereof. Albuquerque Bus Co. v. Everly, 53 N.M. 460, 211 P.2d 127.

Within the proper area of comparison, that is, scrutinizing the act more closely than would be the case if its constitutionality were challenged, and viewing the referendum provision as liberally as we may do, we still are unable to declare the act does not come within the legislative power removed from referendum by the Constitution.

"Preservation" is said in Webster's New International Dictionary, 2d Ed., Unabridged, to be synonymous with "safekeeping, conservation, saving." "Preservation" and its synonyms do not necessarily

connote a keeping against threatened disaster, nor do they necessarily carry the implication of immediacy. When we know that the words "necessary" and "immediate" were wittingly rejected from the exception clause of our Constitution, we must recognize we have no freedom to put them in the exception by judicial construction. It is true that by the omission of these words a massive field of legislative power is carved out of the reserved referendum rights. But of this we said in the Cleveland case:

> "If it seem desirable that a larger reservation of power be lodged in the people under which the popular veto of legislation may be exercised, the remedy is not through the courts, whose only function is to construe the language actually employed, but rather through an amendment to the Constitution using language of similar import to that urged upon, but rejected by, the constitution makers in 1910. * * *"

■ To state that the subject of regulation of vehicular traffic upon public highways properly comes within exercise of the police power is but to announce a commonplace, against which no one would seriously contend. As already noted, though, petitioners do argue that once the legislature has enacted a regulatory measure thereunder, the field of exception to referendum is preempted thereby, unless subsequent legislation in repeal imposes more stringent regulations to effect the general ends of public peace, health or safety.

■ We are unable to agree with the contention. If initial legislation setting allowable width of vehicles at eight feet may be said to be a measure within the exception, as we think it unquestionably can, then it cannot be said that a subsequent enactment increasing the allowable width by six inches is automatically outside the exception, for that would be to say the power given the legislature may have only a "one-way" operation. If that were the rule, it would be difficult, if not impossible to conceive of any limitation or restriction in the field of highway regulation which could ever be liberalized under this power, regardless of the demands of our people and our economy for the free flow of commerce. We perceive the true rule to be that if the legislation bears a valid, reasonable relationship to the preservation of public peace, health or safety, its enactment is within the excepted legislative power, which includes a necessary discretion to either restrict or liberalize requirements.

■ While the legislative changes made may result in a raising of highway hazards in some proportion, we cannot say that a six-inch increase in vehicular width, a one-foot increase in height, the extension to all vehicles of the load tolerance formerly granted to many, and the other changes described, will increase our road hazards to an unreasonable extent.

Furthermore, throughout this litigation petitioners have approached the question of exemption from referendum from only one standpoint—safety. The Constitution, however, does not except from referendum solely those matters having to do with public safety. Also excepted are measures for the preservation of public peace and health. Surely these latter interests may be said to be preserved by legislation providing for the accommodation of trucks and other vehicular traffic so vital in modern living. There is a valid and reasonable equation between the present enactment and the constitutional exception.

It follows, and we hold, that the legislature has spoken upon a subject within the police powers excepted from referendum by our Constitution; it has exercised its discretion to speak one way or the other; and there is apparent a valid and reasonable relationship between the enactment and the preservation of the public peace, health or safety.

What we have said renders it unnecessary to pass upon whether the enactment is one for the maintenance of public schools or for the maintenance of state institutions.

The alternative writ of mandamus heretofore granted in the case was improvidently issued and the same is hereby quashed.

It is so ordered.

COMPTON, C. J., and SADLER, McGHEE and KIKER, JJ., concur.