868 P.2d 668

**STATE of New Mexico, Plaintiff–Appellee,**

v.

**Randall REYNOLDS, and David Johnson, Defendants–Appellants.**

**Nos. 13811, 13793, 13857 and 13962.**

Court of Appeals of New Mexico.

Dec. 22, 1993.

Certiorari Granted Feb. 22, 1994.

**24**

Tom Udall, Atty. Gen., Margaret McLean, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Sammy J. Quintana, Chief Public Defender, Susan Roth, Asst. Appellate Defender, Santa Fe, for defendants-appellants.

*OPINION*

BLACK, Judge.

Defendants were both charged with burglary in Eddy County, and with aggravated burglary, conspiracy, larceny over $2,500, and larceny of a firearm in Chaves County. Prior to entering into plea agreements that disposed of the charges, Defendants moved to suppress evidence obtained after a vehicle in which they were passengers was stopped, and they moved to dismiss the charges for failure of the State to preserve certain evidence. Joint hearings were held in December 1991 on the motions to suppress and in January 1992 on the motions to dismiss. The motions were denied by the district court, and Defendants appeal the denial of both motions. On appeal, the cases from both counties have been consolidated as have the cases for both Defendants. Because we reverse based on the denial of the motions to suppress, we do not reach the denial of the motions to dismiss.

## I. *FACTS*

A New Mexico State Police officer testified at the suppression hearing that he was contacted over the police radio and told to be on the lookout for a pick-up truck on the highway that had passengers sitting in the back of the truck with their feet dangling off the tailgate. No testimony was presented at the suppression hearing indicating that the officer received any information suggesting the truck or its occupants were suspected of being involved in any criminal behavior. The officer testified that he saw the truck and pulled it over, advising the dispatcher that he was stopping a pick-up truck with a white camper shell and three subjects sitting on the tailgate. The officer testified that he stopped the truck because of the safety of the passengers on the back tailgate. He testified that he saw no violation of any law.

The three passengers in the back of the truck proved to be hitchhikers. The officer asked the driver for her driver's license, registration, and proof of insurance. She handed him a valid Florida driver's license. Defendant Reynolds was seated in the mid-

dle of the cab and was looking around in the glove box while Defendant Johnson was asleep in the cab. At this time the officer advised the driver that he had pulled her over because of the safety of the hitchhiker-passengers, and he informed her that they needed to bring their feet into the truck and close the tailgate.

The officer testified that he "started feeling a little bit unsafe" because of the presence of the hitchhiker-passengers, the traffic on the highway, and the difficulty the driver was having producing the vehicle registration. Based on his feeling, he then asked Defendants, who were still seated in the cab of the truck, to produce identification. Reynolds produced a Pennsylvania driver's license with the name Watkins on it. Since Johnson was asleep, the officer asked Reynolds to try to wake him up. Reynolds informed the officer that Johnson was a heavy sleeper. The officer then asked Reynolds to remove Johnson's identification from Johnson's pocket. Reynolds complied with this request and gave the officer Johnson's driver's license. The police officer also obtained driver's licenses from the three hitchhikers.

The officer then returned to his vehicle and ran a "wants and warrants" check on all six licenses, as well as a registration and warrant check on the vehicle license plate. The warrant check on the hitchhikers came back clear, and the officer testified he had to "back off" at this point and release them. There is disagreement regarding the length of time it took to run these checks. The officer testified that about fifteen to twenty minutes later he received information indicating that Johnson was wanted in Delaware. Defendants maintain the police records, which were destroyed, would indicate they were detained well over one hour before being arrested.

The registration check on the vehicle indicated that the license plate belonged to a four-door Ford sedan, not the Chevrolet pick-up truck that the officer had stopped. A check of the vehicle identification number, however, did not indicate that the truck was stolen, so the officer asked the dispatcher to call the registered owner who communicated he had previously reported the vehicle stolen in West Virginia. Upon learning that the truck was stolen, the officer arrested the driver and Defendants. Based upon a statement given to officers by the driver after her arrest, police obtained a search warrant for the truck and seized evidence from the truck, which in turn resulted in Defendants being charged with the burglary and larceny offenses to which they ultimately pleaded guilty.

## II. PROPRIETY OF THE STOP

The officer testified repeatedly that the only reason he stopped the truck was because of concern for the safety of the passengers on the tailgate. Defendants rely on this testimony to argue that the stop was improper under *State v. Creech*, 111 N.M. 490, 806 P.2d 1080 (Ct.App.1991), because it was based on safety concerns rather than criminal conduct. However, *Creech* is not controlling in this case. The officer who made the stop in *Creech* was a conservation officer of the Game and Fish Department. *Id.* at 491, 806 P.2d at 1081. Therefore, his statutory authority to make stops was very limited. *Id.* at 492, 806 P.2d at 1082. The individual who made the stop in the present case was an officer with the New Mexico State Police. His authority to stop individuals traveling on a highway is broader than that of a conservation officer. *Compare* NMSA 1978, Section 29-2-18 (Repl. Pamp.1990) (powers of state police) *with* NMSA 1978, Section 17-2-19 (Repl. Pamp.1988) (powers of conservation officers).

The State has a legitimate interest in the regulation of vehicular traffic on public highways. *Otto v. Buck*, 61 N.M. 123, 130, 295 P.2d 1028, 1033 (1956). Part of the function of police officers is to carry out community caretaking functions to enhance public safety. *See Cady v. Dombrowski*, 413 U.S. 433, 441, 93 S.Ct. 2523, 2528, 37 L.Ed.2d 706 (1973); *State v. Martinez*, 260 N.J.Super. 75, 615 A.2d 279, 281 (App.Div.1992). It is appropriate, then, for police officers to stop vehicles for a specific, articulable safety concern. *State v. Pinkham*, 565 A.2d 318, 319 (Me.1989). We hold, therefore, that the officer properly stopped the truck to warn the

passengers riding in the back of the truck of a safety concern.

### III. *PROPRIETY OF THE DETENTION*

 Police detention of a motor vehicle traveling on the highway constitutes a seizure, and ordinarily such detention is forbidden unless the officers detaining the vehicle have probable cause, or at least reasonable suspicion, to believe that the vehicle or its occupants are subject to seizure under an applicable criminal law. *State v. Bolton*, 111 N.M. 28, 32, 801 P.2d 98, 102 (Ct.App.), *cert. denied*, 111 N.M. 16, 801 P.2d 86 (1990). "In determining the purpose of a stop, the court must consider the law enforcement purposes being served as well as the time reasonably needed to effectuate their purposes[.]" *State v. Cohen*, 103 N.M. 558, 561, 711 P.2d 3, 6 (1985) (citing *United States v. Hensley*, 469 U.S. 221, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985)), *cert. denied*, 476 U.S. 1158, 106 S.Ct. 2276, 90 L.Ed.2d 719 (1986). The scope of an intrusion following any stop must therefore be "'strictly tied to and justified by' the circumstances which rendered its initiation permissible." *Terry v. Ohio*, 392 U.S. 1, 19, 88 S.Ct. 1868, 1878, 20 L.Ed.2d 889 (1968) (quoting *Warden v. Hayden*, 387 U.S. 294, 310, 87 S.Ct. 1642, 1652, 18 L.Ed.2d 782 (1967) (Fortas, J., concurring)). Therefore, detention beyond the time necessary for the purposes of the stop is improper. *State v. Anderson*, 107 N.M. 165, 168, 754 P.2d 542, 545 (Ct.App.1988).

In *Delaware v. Prouse*, 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979), a patrolman stopped an automobile occupied by the defendant and seized marijuana in plain view on the car floor. The trial court granted the defendant's motion to suppress and the Delaware Supreme Court affirmed. The United States Supreme Court held that since the officer had not observed either traffic violations, equipment violations, or any suspicious activity, stopping the vehicle to check for a driver's license and vehicle registration violated the Fourth Amendment. While the facts in *Prouse* are not exactly on point, we think the Court's language in stating its holding is relevant:

[E]xcept in those situations in which there is at least articulable and reasonable suspicion that a motorist is unlicensed or that an automobile is not registered, or that either the vehicle or an occupant is otherwise subject to seizure for violation of law, stopping an automobile and detaining the driver in order to check his driver's license and the registration of the automobile are unreasonable under the Fourth Amendment.

*Id.* at 663, 99 S.Ct. at 1401.

In the present case, the fact that the officer had a legitimate reason to stop the vehicle and caution the hitchhiker-passengers about the danger of dangling their feet over the tailgate does not create a reasonable suspicion that the driver was unlicensed or the vehicle was stolen. Under the *Terry* analysis, therefore, we must determine whether the detention constituted an improper seizure and violated the safeguards of the Fourth Amendment.

When the officer originally approached the truck, his purpose was to warn the passengers of a potentially unsafe situation. However, he immediately asked the driver for her driver's license, registration, and proof of insurance. She handed him a valid Florida driver's license as he advised her that he had pulled her over because of the safety of the passengers in the back of the truck. It is difficult to see why it would be "reasonable," which the Fourth Amendment requires, to require production of a license, registration, and/or proof of insurance to facilitate a safety warning.

The majority of courts that have addressed the issue have held that a police officer who stops a vehicle under similar circumstances is not entitled to request a driver's license. *State v. Farley*, 308 Or. 91, 775 P.2d 835, 836 (1989) (when stopping vehicle without visible plates, officer was not entitled to request driver's license after observing temporary sticker); *State v. DeArman*, 54 Wash.App. 621, 774 P.2d 1247, 1249 (1989) (once deputy determined driver was not having difficulty, no right to compel identification); *State v. Chatton*, 11 Ohio St.3d 59, 463 N.E.2d 1237, 1240–41 (1984) (per curiam) (once officer who stopped vehicle without license plate saw

temporary sticker he was not entitled to request driver's license), *cert. denied*, 469 U.S. 856, 105 S.Ct. 182, 83 L.Ed.2d 116 (1984). *But see State v. Godwin*, 121 Idaho 491, 496, 826 P.2d 452, 457 (1992) (reasonable to ask for license of driver who had stopped to assist another motorist).

In the present case, the officer testified that he stopped the truck because he was concerned about the safety of the passengers in the back. Once the officer had given the warning the purpose of the stop had been effectuated. He offered no justification for his decision to request information from the driver other than it was his own procedure, based on a training manual not in evidence. On these facts, we conclude that the officer exceeded the scope of a reasonable inquiry. *See People v. McVey*, 185 Ill.App.3d 536, 133 Ill.Dec. 624, 626–27, 541 N.E.2d 835, 837–38 (1989); *People v. Pizzo*, 144 A.D.2d 930, 534 N.Y.S.2d 249, 250 (1988), *appeal denied*, 73 N.Y.2d 1020, 541 N.Y.S.2d 774, 539 N.E.2d 602 (1989); *cf. Creech*, 111 N.M. at 493–94, 806 P.2d at 1083–84 (rejecting an individual officer's own standard procedure as the equivalent of a plan embodying explicit neutral limitations on conduct as a substitute for reasonable suspicion).

The Ohio Court of Appeals faced a similar situation in *City of Fairborn v. Orrick*, 49 Ohio App.3d 94, 550 N.E.2d 488 (1988). In that case the defendant was driving a motorcycle when a local police officer noticed his passenger was not wearing the protective eyegear required by city ordinance. After stopping the vehicle, the officer advised both the driver and passenger that the passenger should be wearing protective eyegear, but the officer did not cite the passenger. When the officer then asked to see the license of the driver, the driver responded that it had been suspended, and he was then charged with driving under suspension. The Court of Common Pleas denied the defendant's motion to suppress, but the Court of Appeals reversed, reasoning:

> [The officer's] "articulable and reasonable suspicion" centered exclusively upon the passenger of the motorcycle. He admitted that he had no reason to suspect the driver. Consequently, although it was reasonable for the police officer to stop the motorcycle for the purpose of citing the passenger or to give him a warning, there was no proper basis for detaining the driver of the motorcycle in order to check his driver's license.

*Id.*, 550 N.E.2d at 489–90.

In the present case, the officer testified that the reason he stopped the truck was a concern for the safety of the passengers on the back tailgate. When asked if the truck was violating any state, municipal, or federal law, the officer said that it was not. The officer said that he had made the stop for the safety of the passengers. Under these facts, we find that the detention of the truck and the request for the license of the driver, registration, and proof of insurance violated the Fourth Amendment requirement of reasonableness. Since, under the facts of this case, it was unconstitutional for the officer to ask the driver of the truck for her license, it follows that it would also be unconstitutional for the officer to ask the passengers for their driver's licenses. *See State v. Damm*, 246 Kan. 220, 787 P.2d 1185, 1188 (1990); *State v. Johnson*, 805 P.2d 761, 764 (Utah 1991); *State v. Hansen*, 837 P.2d 987, 988–89 (Utah Ct.App.1992).

## IV. CONCLUSION

We hold that under these facts, it was not reasonable for the officer to detain the vehicle or its occupants beyond the point when he had informed the driver of his concern for the safety of the passengers on the tailgate. The detention of the occupants of the truck while the "wants and warrants" checks were made on all occupants was an unreasonable seizure, and all evidence derived as a result is inadmissible as fruit of the poisonous tree. *See generally State v. Vasquez*, 112 N.M. 363, 815 P.2d 659 (Ct.App.), *cert. denied*, 112 N.M. 388, 815 P.2d 1178 (1991). Accordingly, we reverse and remand with instructions to suppress all evidence obtained as a result of the improper seizure.

IT IS SO ORDERED.

MINZNER, C.J., and APODACA, J., concur.