890 P.2d 1315

STATE of New Mexico,
Plaintiff–Petitioner,

v.

Randall REYNOLDS and David Johnson,
Defendants–Respondents.

No. 21922.

Supreme Court of New Mexico.

Feb. 9, 1995.

Tom Udall, Atty. Gen., Margaret McLean, Asst. Atty. Gen., Santa Fe, for petitioner.

Sammy J. Quintana, Chief Public Defender, Susan Roth, Asst. Appellate Defender, Santa Fe, for respondents.

## OPINION

FRANCHINI, Justice.

On petition of the State of New Mexico, we issued a writ of certiorari to the Court of Appeals under NMSA 1978, Sections 34–5–14(B)(3) and (4) (Repl.Pamp.1990) (significant question of constitutional law; issue of substantial public interest). In a consolidated appeal, that Court reversed a district court's denial of a motion to suppress evidence discovered pursuant to a search warrant. *State v. Reynolds,* 117 N.M. 23, 24, 868 P.2d 668, 669 (Ct.App.1993). There are two issues on appeal: (1) whether, under NMSA 1978, Sections 66–2–12(A)(3), 66–3–13, and 66–5–16 (Repl.Pamp.1994), a law enforcement officer is permitted to ask for a driver's license, registration, and proof of insurance once an officer stops an automobile for safety reasons; and (2) whether those statutes are consistent with the constitutional protections against unreasonable searches and seizures afforded by the Fourth Amendment of the United States Constitution and Article II, Section 10 of the New Mexico Constitution. We answer both questions affirmatively.

It is uncontroverted that the police in this case made a lawful automobile stop to warn its passengers of a safety concern. The Court of Appeals held that because "detention beyond the time necessary for the purpose of [a] stop is improper," *Reynolds,* 117 N.M. at 26, 868 P.2d at 671, the officer's subsequent request to see the driver's license of the driver, registration, and proof of insurance was an unreasonable detention, *id.* at 27, 868 P.2d at 672. The detention having been unreasonable in the Court's view, the

Court ordered suppression of all evidence subsequently acquired as "fruit of the poisonous tree." *Id.*

We reverse and hold that when a vehicle is lawfully stopped for safety reasons, an officer may reasonably detain the vehicle and its passengers for the purpose of asking for identification, registration, and/or proof of insurance. *See* § 66–3–13 (stating that person operating vehicle shall display registration upon demand of police officer); § 66–5–16 (stating that person operating vehicle shall display license upon demand of police officer).

■ *Standard of review.* Because this case involves a mixed question of law and fact, we use the substantial evidence standard for review of the facts and then make a de novo review of the trial court's application of the law to those facts. *See State v. Werner,* 117 N.M. 315, 317, 871 P.2d 971, 973 (1994); *State v. Attaway,* 117 N.M. 141, 144, 870 P.2d 103, 106 (1994).

*Facts and proceedings.* Defendants Randall Reynolds and Frank Johnson were passengers in the cab of a small pickup truck traveling at night with its emergency lights flashing along Interstate 10.[1] Three men were riding on the tailgate of the truck with their feet hanging close to the road surface. State police officer Frank Musitano was concerned for the safety of the tailgate passengers and stopped the truck. After approaching the truck, Officer Musitano requested identification from the tailgate passengers and for the license, registration, and proof of insurance from the driver, Patricia Bowman. He discovered that the three tailgate passengers were hitchhikers who recently had been picked up. Bowman gave Musitano a valid driver's license but could not produce registration or proof of insurance papers. Musitano noticed Reynolds "fiddling around," and the officer began feeling unsafe because of

---

1. Because it is the propriety of the continuing detention to check the *driver's* documents that is at issue and not the lawfulness of the stop or of the request of identification from Defendants, we question whether Defendants have standing to challenge the constitutionality of the officer's actions in this case. *See United States v. Salvucci,* 448 U.S. 83, 85, 100 S.Ct. 2547, 2549, 65 L.Ed.2d 619 (1980); *Alderman v. United States,* 394 U.S. 165, 171–72, 89 S.Ct. 961, 965, 22 L.Ed.2d 176 (1969). This issue, however, was not raised, briefed, or argued either in the trial court or on appeal. We therefore address only the issue raised by the parties. *See Galvan v. City of Albuquerque,* 87 N.M. 235, 236, 531 P.2d 1208, 1209 (1975).

the number of men, the physical conditions, and the fact that no registration or insurance papers had been produced. Based on this feeling, he requested identification from the two Defendants and returned to his patrol car. He ran a "want and warrant check" on all of the truck's occupants and ran a computer check on the truck's license plate number. After fifteen to twenty minutes, he learned that Johnson was wanted in Delaware and that the license plate belonged to a different car. Officer Musitano obtained the VIN number from the truck and discovered that the truck had been stolen. Musitano let the hitchhikers leave but arrested Bowman, Reynolds, and Johnson. Later, officers obtained a search warrant and discovered other stolen property in the truck.

At a suppression hearing, Defendants argued that after the valid initial stop the detention and request for driver's identification was illegal under *State v. Creech*, 111 N.M. 490, 806 P.2d 1080 (Ct.App.1991). The trial court denied the motion to suppress. On appeal, the Court of Appeals held that while it is appropriate for police officers to stop vehicles for a specific safety concern, the scope of an intrusion following that stop has to be "strictly tied to and justified by" the purposes of the stop. *Reynolds*, 117 N.M. at 26, 868 P.2d at 671 (quoting *Terry v. Ohio*, 392 U.S. 1, 19, 88 S.Ct. 1868, 1878, 20 L.Ed.2d 889 (1968)). Citing *Delaware v. Prouse*, 440 U.S. 648, 663, 99 S.Ct. 1391, 1401, 59 L.Ed.2d 660 (1979), for authority and example, the Court found it "difficult to see why it would be 'reasonable' ... to require production of a license, registration, and/or proof of insurance to facilitate a safety warning." *Reynolds*, 117 N.M. at 26, 868 P.2d at 671. Without addressing the statutes that require production of driver and automobile information on demand, the Court concluded that the officer in this case "exceeded the scope of a reasonable inquiry" after making the safety stop, thus violating the Fourth Amendment. *Id.* at 27, 868 P.2d at 672.

■ *In continuing detention cases, to determine reasonableness reviewing court must balance policeman's and government's interest in detention against the nature and scope of the intrusion.* The Court of Appeals used the single quote from *Terry* and the narrow holding of *Prouse* to define its analysis as whether the particular conduct (asking for a license) was related to or justified by the reason for the initial detention (to warn passengers of a potentially unsafe situation). In our view, however, the Court of Appeal's focus was misdirected to a "search" analysis instead of to a "seizure" analysis.

*Terry is not controlling.* In *Terry* (a seizure and subsequent search without a warrant), the Supreme Court expressed the test as a dual one: "whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place." *Terry*, 392 U.S. at 20, 88 S.Ct. at 1879. In order to assess the reasonableness of a particular seizure and search, the reviewing court must first "focus upon the governmental interest which allegedly justifies official intrusion upon the constitutionally protected interests of the private citizen" and this is done "by balancing the need to search [or seize] against the invasion which the search [or seizure] entails." *Id.* at 21, 88 S.Ct. at 1879 (quoting *Camara v. Municipal Court*, 387 U.S. 523, 534–35, 536–37, 87 S.Ct. 1727, 1734–35, 18 L.Ed.2d 930 (1967)) (alteration in original). Under the facts of this case, the only question posed is whether Officer Musitano's request for identification was "justified at its inception."

In *Prouse*, the Supreme Court held that police may not randomly stop a vehicle solely to check a driver's license or car registration because a seizure of this nature is arbitrary. 440 U.S. at 663, 99 S.Ct. at 1401. The Court used only the balancing approach in determining reasonableness, testing the validity of the law enforcement practice "by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests." *Id.* at 654, 99 S.Ct. at 1396. Although *Terry* was cited in *Prouse*, the Court did not engage in a "search" analysis insofar as it did not refer to the request for license as a "search".

The same year the Court wrote *Prouse* it published its opinion in *Brown v. Texas*, 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979).

There, the Court characterized the detention of an individual for purposes of ascertaining his identity as a "seizure," not a "search". *Id.* at 50, 99 S.Ct. at 2640. Using the same balancing test as *Prouse,* the Court concluded that the random stop of a pedestrian to request identification was unreasonable because it was arbitrary. *Id.* at 52, 99 S.Ct. at 2641. In this case, however, there is no question that Officer Musitano lawfully and properly stopped the truck. Under these circumstances, it was not arbitrary to make the stop. *See Prouse,* 440 U.S. at 653–54, 99 S.Ct. at 1396 (stating that purpose of Fourth Amendment is to safeguard against arbitrary invasions).

■ *Requesting a driver's license, registration, and proof of insurance is not a "search".* For a police action to be characterized as a "search", the officer must somehow search or take an object in which a person has a reasonable expectation of privacy. *See Katz v. United States,* 389 U.S. 347, 361, 88 S.Ct. 507, 516, 19 L.Ed.2d 576 (1967) (Harlan, J. concurring) (stating that the touchstone of Fourth Amendment analysis of a search is whether the person has a constitutionally-protected reasonable expectation of privacy); *cf. State v. Haar,* 110 N.M. 517, 524, 797 P.2d 306, 313 (Ct.App.) (holding that police testing of a rifle did not compromise a legitimate interest in privacy and, consequently, was not a "search" under the Fourth Amendment), *cert. denied,* 110 N.M. 330, 795 P.2d 1022 (1990).

A driver's license is a document specifically created for the purpose of proving that an individual is qualified to drive. It is intended to be a public document and individuals regularly display their licenses for, among other things, demonstrating their right to drive, for cashing checks, for getting into bars, or for buying liquor. Similarly, registration and insurance documents are created for the purpose of proving that the driver has complied with certain laws that must be satisfied before a person may legally operate a vehicle. When the legislature created the duty to carry a license, it also created the duty to produce the license upon request by a police officer. *See* § 66–5–16. Likewise, car registration and proof of insurance documents are intended to be public documents to prove that an individual has comported with the motor vehicle statutes. *See* § 66–5–13. Based on these facts, we believe that individuals have no legitimate subjective expectation of privacy in their license, registration, or insurance documents when they are operating a motor vehicle and an officer requests to see such documents. Consequently, it is not a "search" to request those documents. *See, e.g., Holder v. City of Allentown,* 151 F.R.D. 552, 554 (E.D.Pa.1993) (holding that a person has no privacy interest in information in motor vehicle registration records because they are a matter of public record and are readily accessible); *People v. Herrera,* 124 Cal.App.3d 386, 177 Cal.Rptr. 288, 289 (1981) (stating that there is no reasonable expectation of privacy in the information contained in a license because it is a public record displayed routinely for purposes of identification); *People v. Brooks,* 405 Mich. 225, 274 N.W.2d 430, 437 (1979) (stating that the seizure and unfolding of a temporary driver's license is not a search because there is no reasonable expectation of privacy in a driver's license); *cf. Smith v. Maryland,* 442 U.S. 735, 745–46, 99 S.Ct. 2577, 2582–83, 61 L.Ed.2d 220 (1979) (stating, in case upholding the warrantless installation of a pen register, that the Supreme Court has consistently held that individuals have no legitimate expectation of privacy in information they voluntarily turn over to third parties).

■ *The officer's action was a continuing detention or seizure.* The question before us, then, is whether a *continuing seizure* was reasonable based on the officer's statutory authority to request the documents. Specifically, in this case we determine whether there is a valid government interest in holding Bowman for the period of time to check for a license, registration, and insurance; if so, we balance that interest against the degree and nature of the intrusion of her personal security. *See Prouse,* 440 U.S. at 654, 99 S.Ct. at 1396. As in *Terry,* the police officer's personal interest in his own safety and protection must weigh in favor of the reasonableness of the intrusion. 392 U.S. at 23, 88 S.Ct. at 1881.

*Cases cited by Court of Appeals are distinguishable.* Citing *State v. Farley,* 308 Or. 91, 775 P.2d 835, 836 (1989), *State v. DeArman,* 54 Wash.App. 621, 774 P.2d 1247, 1249 (1989), and *State v. Chatton,* 11 Ohio St.3d 59, 463 N.E.2d 1237, 1240–41 (per curiam), *cert. denied,* 469 U.S. 856, 105 S.Ct. 182, 83 L.Ed.2d 116 (1984), for authority, the Court of Appeals asserted that "[t]he majority of courts that have addressed the issue have held that a police officer who stops a vehicle under similar circumstances is not entitled to request a driver's license." *Reynolds,* 117 N.M. at 26, 868 P.2d at 671. We find, however, that these cases are all distinguishable from the case at bar.

In *Farley* the court based its conclusion on the fact that the Oregon legislature has expressly limited by statute an officer's scope of investigation for traffic stops. 775 P.2d at 836. Under the Oregon statutes, an officer may "detain any individual reasonably believed to have committed a violation ... only so long as is necessary to determine, for the purposes of issuing a citation, the identity of the violator and such additional information as is appropriate for law enforcement agencies in the state." *Id.* The court interpreted its statutes to mean that an officer could ask a "defendant to show his driver license only for the purposes of investigation reasonably related to the stop." *Id.* In the court's opinion, the officer had no authority to ask for the driver's license in that case because the officer discovered that "the traffic infraction he was investigating had not actually occurred." *Id.* While we do not necessarily agree with the *Farley* court's reasoning that inclusion of a standard excludes all other conduct regardless of the reasonableness of the conduct under the circumstances, our statutes do not contain such a limitation.

In *DeArman* the court found that the stop was unlawful because there was no reasonable suspicion that the driver had engaged in criminal activity. 774 P.2d at 1249. As we stated above, the stop in this case was not unlawful because it was not arbitrary.

In *Chatton* an officer stopped a car when he could not see a license plate. 463 N.E.2d at 1237. He asked for identification after he walked up to the car and saw that it did in fact have temporary tags. *Id.* The court used the principle stated in *Terry* that a "detention by a law enforcement officer of an individual must ... be justified by 'specific and articulable facts' indicating that the detention was reasonable" to determine the reasonableness of the continuing detention. *Id.* at 1239. In this case, however, the safety reasons were "specific and articulable facts" for the initial detention, and thus the *Terry* initial-seizure principles are inapplicable. As stated above, after a lawful stop has been made the correct test is whether the continuing detention is reasonable in light of the "balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers." *United States v. Brignoni–Ponce,* 422 U.S. 873, 878, 95 S.Ct. 2574, 2578, 45 L.Ed.2d 607 (1975). The *Chatton* court based its decision on its fear that allowing an officer to ask for identification after he saw that a vehicle bore valid tags would allow "the detention of the driver of any vehicle bearing temporary tags.... The potential for abuse if such a rule were in effect, through arrogant and unnecessary displays of authority, cannot be ignored or discounted." *Id.* at 1240. The court compared the detention for request for driver's license to the random detentions struck down in *Prouse. Id.* We do not agree that allowing detention for identification after a lawful stop will promote arbitrary or random stops.

*Other case law addressing the issue.* There are several cases that address the reasonableness of a detention for identification after a lawful stop. In *State v. Godwin,* 121 Idaho 491, 826 P.2d 452 (1992), a police officer stopped a car because of an equipment violation. When the car pulled over, another car traveling ahead of it also pulled to the side of the road. Another officer saw the situation and went up to the second car because he was concerned for the safety of the other officer and to determine whether the driver of the second car needed assistance. *Id.* 826 P.2d at 456. The driver of the first car could not produce her license and claimed that it was in her purse in the second car. After discovering that the license was not in the purse, the officer asked the driver of the second car for identification and ran a warrant check. Finding that the

seizure of the second driver to run a check on his license was both reasonable and appropriate, the court stated:

> In making any stop, whether the stop is to enforce the traffic laws or to carry out the officer's community caretaker function, an officer should be allowed to identify, with certainty, the person with whom he is dealing. This is necessary to protect himself ... from danger, to accurately prepare any required reports concerning his contact with the motorist, and to allow the officer to adequately respond to allegations of illegal conduct or improper behavior.

*Id.* (quoting *State v. Godwin*, 121 Idaho 517, 826 P.2d 478, 481 (Ct.App.1991)).

The court in *Godwin* cited *State v. Ellenbecker*, 159 Wis.2d 91, 464 N.W.2d 427 (Ct. App.1990), *review denied*, 468 N.W.2d 28 (Wis.1991), for support. In *Ellenbecker*, an officer asked for identification and ran a license check after determining that the driver of a car parked on the side of the road did not need assistance. *Id.* 464 N.W.2d at 428. The court stated that "[i]n a community caretaker case, reasonableness is determined by balancing the public need and interest furthered by the police conduct against the degree of and nature of the intrusion upon the privacy of the citizen." *Id.* at 429. The court stated several reasons for permitting an officer performing a motorist assist to ask for identification, including officer reporting requirements and protecting the officer if a claim of improper behavior is made, and cited Wisconsin statutes (similar to ours) that implicitly recognize the public interest by requiring drivers to be validly licensed and to display their licenses on demand. *Id.* at 430. Holding that a status check is a minimal intrusion, the court held that "[t]he public interest in asking for the license and conducting a status check outweighs the minimal intrusion involved." *Id.* The courts in *Godwin* and *Ellenbecker* each held that their holdings did not conflict with the prohibition against arbitrary stops found in *Delaware v. Prouse*. *Godwin*, 826 P.2d at 457; *Ellenbecker*, 464 N.W.2d at 430.

Other courts have held that generally, whenever a driver is validly stopped for whatever reason, it is reasonable for the officer to ask for identification and proof of insurance. *See State v. Aguinaldo*, 71 Haw. 57, 782 P.2d 1225, 1229 (1989); *State v. Tourtillott*, 289 Or. 845, 618 P.2d 423, 434–35 (1980), *cert. denied*, 451 U.S. 972, 101 S.Ct. 2051, 68 L.Ed.2d 352 (1981).

*Detention in this case was reasonable.* We do not know exactly how long it took Officer Musitano to ask Bowman to produce her license and for her to produce it; apparently it took a minute or two for her to tell him that she could not find the truck's registration and proof of insurance. Given the fact that the privacy interest in the documents was nonexistent as to a police officer and the detention period de minimis, we find that requesting production of such documents after the lawful stop was reasonable. If a driver invites the attention of a police officer by engaging in unsafe driving conduct, or whenever an officer is reasonably called upon to make contact with a driver (such as at border checkpoints and community caretaker functions), the officer has the right to know with whom he is talking and may check to see that the driver is both licensed and driving a car that is registered and insured. Under the facts of this case, therefore, the detention was not unreasonable and did not violate the Fourth Amendment of the U.S. Constitution or Article II, Section 10 of the New Mexico Constitution.

*Conclusion.* The initial stop in this case was lawful, the government has a legitimate interest in making sure that all drivers are licensed and driving vehicles that are registered and insured, and the intrusion of requesting a driver's license and proof of registration and insurance was minimal; therefore, the continuing detention after the valid initial stop was reasonable. The trial court properly refused to suppress the evidence obtained with the search warrant. We reverse the Court of Appeals and affirm the trial court and remand to the Court of Appeals for disposition of the other issues Defendants raised on appeal to that Court.

**IT IS SO ORDERED.**

BACA, C.J., and RANSOM and FROST, JJ., concur.