This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellant,

v. NO. 30,567

**JUSTIN A. CLAYTON,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF CURRY COUNTY**
**Robert S. Orlik, District Judge**

Gary K. King, Attorney General
Santa Fe, NM
Ralph E. Trujillo, Assistant Attorney General
Albuquerque, NM

for Appellant

McGarry Law Office
Kathleen McGarry
Glorieta, NM

for Appellee

**MEMORANDUM OPINION**

**WECHSLER, Judge.**

The State is appealing from a district court order granting Defendant's motion to suppress evidence based on the lack of reasonable suspicion to seize Defendant at the beginning of the police/citizen encounter. We conclude that there was no reasonable suspicion to detain Defendant's vehicle in light of the district court's factual finding that the officer who seized Defendant had not received information relating to Defendant's vehicle. Accordingly, we affirm the district court's ruling.

**BACKGROUND**

Sergeant Roman Romero of the Clovis Police Department provided the only testimony at Defendant's suppression hearing. He testified that, on January 7, 2010, he was on patrol when he received a call from dispatch that a seventeen-year-old female, Elizabeth F., committed a domestic battery against her mother and pregnant sister while they were trying to prevent her from running away. Sergeant Romero testified that the dispatch stated that Elizabeth F. had left the scene of the batteries with Defendant, who was identified by name. He stated that the original information was that she ran down the alley with Defendant and got into Defendant's vehicle. Sergeant Romero knew Defendant, knew his vehicle, and had seen it parked in front of a residence. He therefore proceeded to this residence instead of going to Elizabeth F.'s house. A woman from Elizabeth F.'s house stated that Defendant would come to Elizabeth F.'s house to help her with her father, and a check of the telephone at the

residence at which Sergeant Romero found Defendant's vehicle indicated communication between that residence and Elizabeth F.'s house a few hours earlier.

Sergeant Romero left the residence and a short time later saw Defendant's vehicle parked at an Allsup's convenience store. He ran a check of the license plate and confirmed that it was Defendant's vehicle. Sergeant Romero estimated that between ten and fifteen minutes had elapsed since the original dispatch and that it was now around 6:00 p.m. He testified that he thought that Elizabeth F. might be in the vehicle, and he proceeded to pull up behind it, and block it, with his flashing lights engaged. He stated that the sole purpose of the stop was to look for Elizabeth F. and to see if Defendant had any information as to Elizabeth F.'s whereabouts. As he approached the vehicle, he saw a head come into view on the driver's side. He approached the vehicle on the passenger side, and before he made contact with Defendant, he noticed that Defendant was the only person in the vehicle. Sergeant Romero testified that when he reached the vehicle he saw a large knife on the seat, and he ordered Defendant out of the vehicle and handcuffed him after Defendant made a move for the knife.

The State conceded that Defendant was seized when Sergeant Romero blocked and approached Defendant's vehicle, but the State argued that there was reasonable suspicion to believe that Defendant was with Elizabeth F. The district court judge

3

questioned Sergeant Romero, noting that the motion to dismiss indicated that Elizabeth F. was last seen walking away from her house with Defendant, with no mention of Defendant's vehicle. Sergeant Romero stated that he had been informed that Defendant and Elizabeth F. left together, whether on foot or by car, and that all of the information placed these two individuals together. The district court ruled that there was no nexus between Elizabeth F. and Defendant's vehicle. The district court discounted the earlier testimony that Elizabeth F. was seen getting into Defendant's vehicle, finding instead that, at best, she was seen leaving on foot with him. Also, the district court ruled that any suspicion was dispelled when Sergeant Romero saw that she was not in the vehicle.

**STANDARD OF REVIEW**

"A motion to suppress evidence involves a mixed question of fact and law." *State v. Vandenberg*, 2003-NMSC-030, ¶ 17, 134 N.M. 566, 81 P.3d 19. "Thus, our review of this case involves two parts: the first is a factual question, which we review for substantial evidence; the second is a legal question, which we review de novo." *Id.* "We view the facts in the manner most favorable to the prevailing party and defer to the district court's findings of fact if substantial evidence exists to support those findings." *State v. Urioste*, 2002-NMSC-023, ¶ 6, 132 N.M. 592, 52 P.3d 964.

**REASONABLE SUSPICION**

"[A]n officer may detain a person in order to investigate possible criminal activity." *State v. Jason L.*, 2000-NMSC-018, ¶ 20, 129 N.M. 119, 2 P.3d 856 (internal quotation marks and citation omitted). "Investigatory detention is permissible when there is a reasonable and articulable suspicion that the law is being or has been broken." *Id.* (internal quotation marks and citation omitted). "A reasonable suspicion is a particularized suspicion, based on all the circumstances that a particular individual, the one detained, is breaking, or has broken, the law." *Id.* "When determining whether a person is seized we consider all of the circumstances surrounding the incident in order to determine whether a reasonable person would have believed that he [or she] was not free to leave." *Id.* ¶ 15 (alteration in original) (internal quotation marks and citation omitted). "Evidence obtained must be suppressed if it is the fruit of an illegal detention." *State v. Cardenas-Alvarez*, 2000-NMCA-009, ¶ 25, 128 N.M. 570, 995 P.2d 492, *aff'd,* 2001-NMSC-017, 130 N.M. 386, 25 P.3d 225.

As indicated, the State has conceded that Defendant was seized at the outset of his encounter with Sergeant Romero, when he pulled up behind Defendant's parked car with his flashing lights engaged. We therefore consider the issue of reasonable suspicion. Defendant argues that there was no reasonable suspicion that he had broken or was breaking the law. Defendant relies on the proposition that New Mexico

law requires that there be individualized suspicion of criminal activity. *See, e.g.*, *Jason L.*, 2000-NMSC-018, ¶ 20 (noting that "reasonable suspicion is a particularized suspicion, based on all the circumstances[,] that *a particular individual, the one detained*, is breaking, or has broken, the law." (emphasis added)). Defendant's argument overlooks the fact that Sergeant Romero suspected that Elizabeth F. was an occupant in the vehicle. "Police detention of a motor vehicle traveling on the highway constitutes a seizure, and ordinarily such detention is forbidden unless the officers detaining the vehicle have probable cause, or at least reasonable suspicion, to believe that the vehicle *or its occupants* are subject to seizure under an applicable criminal law." *State v. Reynolds*, 117 N.M. 23, 26, 868 P.2d 668, 671 (Ct. App. 1993) (emphasis added), *rev'd on other grounds*, 119 N.M. 383, 890 P.2d 1315 (1995); *see also State v. Bolton*, 111 N.M. 28, 32, 801 P.2d 98, 102 (Ct. App. 1990). We therefore consider whether there was reasonable suspicion to believe that Elizabeth F. was in the vehicle.

The State argues that it was reasonable to conclude that Elizabeth F. was an occupant in the vehicle because Sergeant Romero had been informed that the two were last seen when Elizabeth F. entered Defendant's vehicle down the alley from where the suspected batteries had occurred. The State correctly notes that Sergeant Romero originally testified that he received this information from dispatch. However,

6

prior to ruling on Defendant's motion, the district court judge questioned Sergeant Romero about the role the vehicle played initially, noting that the motion to dismiss indicated that Elizabeth F. was last seen walking away from her house with Defendant, with no mention of Defendant's vehicle, and that Sergeant Romero's police report does not provide any information about the vehicle. Sergeant Romero stated that he had been informed that Defendant and Elizabeth F. left together, whether on foot or by car, and that all of the information placed these two individuals together. The district court, sitting as factfinder, determined that Sergeant Romero's testimony was inconsistent, and the court resolved this inconsistency by finding that the dispatch stated that , at best, Elizabeth F. was last seen leaving with Defendant on foot.

The State argues that we should consider Sergeant Romero's testimony that Elizabeth F. was seen getting into Defendant's vehicle. However, under our standard of review, we defer to the district court on this factual and credibility determination with respect to Sergeant Romero's testimony and accept the district court's rejection of the officer's testimony that placed Elizabeth F. in Defendant's vehicle. *See State v. Salas*, 1999-NMCA-099, ¶ 13, 127 N.M. 686, 986 P.2d 482 (recognizing that it is for the factfinder to resolve any conflict in the testimony of the witnesses and to determine the weight and credibility of witness' testimony). Given the district court's

factual determination, there was no information placing Elizabeth F. in Defendant's vehicle, either at the time of the original dispatch call or based on any observations made by Sergeant Romero at the place of seizure ten or fifteen minutes after the dispatch call.

On appeal, the State relies on *State v. Funderburg*, 2008-NMSC-026, 144 N.M. 37, 183 P.3d 922, for the proposition that, where officers have a reasonable suspicion that criminal activity may be related to the vehicle, it is constitutionally permissible for the officers to ask questions of the driver so long as the questions are within the scope of the stop. In *Funderburg*, officers had information that a check forger, Sinclair, was leaving a casino parking lot in a dark-colored car. *See id.* ¶ 2. An officer located the car immediately and stopped it. *See id.* ¶¶ 2-3. Sinclair was discovered to be the passenger, not the driver, who was the defendant. *See id.* ¶ 3 The officers asked the defendant for permission to search the car, which he agreed to and which resulted in discovery of the evidence sought to be suppressed. *See id.* ¶ 5. The Supreme Court determined that it was reasonable to expand the scope of the detention from finding Sinclair to questioning the defendant, based on the evolving nature of the encounter. *See id.* ¶¶ 28, 33.

Defendant argues that *Funderburg* is distinguishable because the validity of the initial stop was not at issue. We note that this Court, in *State v. Funderburg*,

8

2007-NMCA-021, ¶ 9, 141 N.M. 139, 151 P.3d 911, *rev'd on other grounds*, 2008-NMSC-026, concluded that the initial stop was reasonable, and the defendant did not challenge that conclusion in the Supreme Court. We agree with Defendant that our Supreme Court's analysis in *Funderburg* is distinguishable because it did not address the validity of the initial stop; instead, it addressed the scope of the detention of a driver after a valid initial stop as it related to the evolving circumstances of criminality involving another occupant of the vehicle.

The State argues that because there was evidence that Elizabeth F. left with Defendant after the alleged battery, we should find the seizure to be reasonable even without any dispatch information linking Elizabeth F. to Defendant's vehicle. We decline to do so because, while the limited facts known to Sergeant Romero may have supported a reason to pursue a consensual encounter or to observe Defendant's movements, the facts did not justify a seizure. As the State concedes, Defendant himself was not the focus of the investigation. There is simply no information that placed the person suspected of wrongdoing in the vehicle. Again, without reason to suspect the vehicle or a known occupant of the vehicle in the suspected criminal activity, there is no reasonable suspicion to justify the detention of the vehicle. *See Reynolds*, 117 N.M. at 26, 868 P.2d at 671.

Also, in considering the reasonableness of the officer's actions, "we should ask

9

ourselves what other actions a reasonable officer would be expected to take under similar circumstances, if not those taken in this [case]." *Funderburg*, 2008-NMSC-026, ¶ 32. Defendant's vehicle was parked in the convenience store parking lot, and it initially appeared that no one was in the vehicle. Sergeant Romero could have dispelled his suspicion that Elizabeth F. might have been with Defendant by looking to see if she was in the vehicle without having to block the vehicle, or he could have engaged in a consensual encounter to ask about her whereabouts. These were readily available options that made the use of force unnecessary.

We agree with the State that the circumstances of Sergeant Romero's encounter with Defendant evolved upon his reaching for the knife in a way that, had the initial contact been lawful, could have led to a different result in this case. By the time Sergeant Romero saw Defendant reach for the knife, however, he had already been improperly detained. *See Jason L.*, 2000-NMSC-018, ¶ 20 ("Reasonable suspicion must exist at the inception of the seizure. The officer cannot rely on facts which arise as a result of the encounter." (citation omitted)). Given the lack of reasonable suspicion to make the initial seizure, we hold that Defendant's motion to suppress was properly granted.

**CONCLUSION**

Viewing the facts that were before the district court in the light most favorable

to its decision to grant Defendant's motion to suppress, we affirm the district court. *See Urioste*, 2002-NMSC-023, ¶ 6 (viewing facts on appeal in a manner most favorable to the prevailing party where substantial evidence supports the findings).

**IT IS SO ORDERED.**

_____
**JAMES J. WECHSLER, Judge**

**WE CONCUR:**

_____
**CYNTHIA A. FRY, Judge**

_____
**RODERICK T. KENNEDY, Judge**