THE STATE OF NEVADA, Appellant, *v.* RICO
SHOUNTES BAYARD, Respondent.

No. 39376

June 26, 2003                                           71 P.3d 498

*Brian Sandoval,* Attorney General, Carson City; *Richard A. Gammick,* District Attorney, and *Gary H. Hatlestad,* Deputy District Attorney, Washoe County, for Appellant.

*Michael R. Specchio,* Public Defender, and *John Reese Petty,* Chief Deputy Public Defender, Washoe County, for Respondent.

Before ROSE, MAUPIN and GIBBONS, JJ.

## OPINION

*Per Curiam:*

### FACTUAL BACKGROUND

This is an expedited appeal by the State of Nevada from a district court order granting a motion to suppress narcotics found when police searched respondent Rico Shountes Bayard after arresting him for committing two minor traffic violations.

Reno Police Officer Ty Sceirine witnessed Bayard commit two minor moving traffic violations. Bayard turned left onto a two-lane thoroughfare and "[i]nstead of taking the closest lane to the center line [Bayard] drove immediately to the outside lane, which is an illegal left turn." The second violation occurred when Bayard changed lanes abruptly. The officer followed the vehicle and observed a pedestrian waving at it. When the pedestrian spotted the patrol vehicle, he acted like he did not want to be seen flagging down the vehicle. At this point, Sceirine activated his lights and Bayard pulled his vehicle over to the side of the road. A male passenger seated beside Bayard was allowed to leave.

Bayard produced identification and cordially asked why he had been stopped. Sceirine told Bayard to step out of the vehicle. When Bayard exited the vehicle, he voluntarily informed Sceirine

that he had a gun in his waistband and produced a valid concealed weapons permit. Bayard consented to a search of his person which yielded $116 in cash. Sceirine then arrested Bayard for violating local traffic ordinances. During the booking procedure, police strip searched Bayard and bindles of cocaine and marijuana fell on the floor when he removed his underwear.

Bayard was charged with (1) trafficking in a controlled substance (cocaine), (2) possession of a controlled substance for the purpose of sale (marijuana), and (3) possession of a controlled substance for the purpose of sale (cocaine). After a preliminary hearing and arraignment, Bayard filed a motion to suppress the drugs based on the allegedly illegal arrest. The district court conducted a hearing and granted Bayard's motion, stating:

> The court finds that defendant's arrest violated NRS 171.1771 because he was arrested instead of being issued a citation even though there were no facts and circumstances which would cause a person of reasonable caution to believe that the defendant would disregard a written promise to appear. The evidence seized in the search incident to this arrest must be suppressed.

The State appeals the district court's decision.

## *DISCUSSION*

" 'Review in this court from a district court's interpretation of a statute is de novo.' "[1] "When a statute is plain and unambiguous, this court will give that language its ordinary meaning and not go beyond it."[2]

As an initial matter, the district court inadvertently relied on NRS 171.1771 in determining Bayard's arrest was unlawful. NRS Chapter 171 covers "proceedings to commitment" in general and NRS 171.1771 discusses an officer's authority to issue a citation or arrest for misdemeanor crimes. The Legislature, however, excluded traffic violations from the purview of NRS 171.1771.[3] The proper statute is found in NRS Chapter 484, which governs traffic violations. NRS 484.795 is the controlling statute because it addresses warrantless misdemeanor arrests for traffic violations.

---

[1] *State, Div. of Insurance v. State Farm,* 116 Nev. 290, 293, 995 P.2d 482, 484 (2000) (quoting *State, Dep't of Mtr. Vehicles v. Frangul,* 110 Nev. 46, 48, 867 P.2d 397, 398 (1994)).

[2] *State v. Allen,* 119 Nev. 166, 170, 69 P.3d 232, 235 (2003).

[3] NRS 171.1779 states, "**NRS 171.177 to 171.1779, inclusive, not applicable to violations of traffic laws.** The provisions of NRS 171.177 to 171.1779, inclusive, do not apply to those situations in which a person is detained by a peace officer for any violation of chapter 484 of NRS."

The State argues NRS Chapter 484 does not apply since Officer Sceirine arrested Bayard for violating a Reno local traffic ordinance, not a state ordinance. The distinction is irrelevant. The purpose of NRS Chapter 484 is to "[e]stablish traffic laws which are uniform throughout the State of Nevada, whether or not incorporated into local ordinances."[4] NRS 484.795, therefore, applies to all traffic ordinances in Nevada regardless of whether the ordinance is local, regional, or statewide.

The United States Supreme Court addressed the constitutional implications of a warrantless arrest for a misdemeanor offense in *Atwater v. Lago Vista*.[5] In that case, an officer pulled over Gail Atwater, a small-town soccer mom with only one prior traffic citation and no criminal record, verbally berated her in front of her two small children, placed her in handcuffs behind her back, and took her to the police station. While at the station, police took away her jewelry, eyeglasses, shoes, and other personal possessions, took her "mug shot," and kept her in a jail cell for an hour.[6] Atwater was forced to undergo this humiliation for committing the fine-only offense of failing to wear a seatbelt.[7] In a controversial 5-4 decision, the United States Supreme Court upheld Atwater's arrest stating that "[i]f an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender."[8] The Court recognized, however, the states' power to legislatively restrict arrests for such minor offenses.[9] The Court stated, "It is of course easier to devise a minor-offense limitation by statute than to derive one through the Constitution, simply because the statute can let the arrest power turn on any sort of practical consideration without having to subsume it under a broader principle."[10] The Court also said it is "only natural that States should resort to this sort of legislative regulation . . . [because] it is in the interest of the police to limit petty-offense arrests, which carry costs that are simply too great to incur without good reason."[11] Numerous states have statutorily imposed more restrictive safeguards than those provided by the Fourth Amendment.[12]

---

[4]NRS 484.011.

[5]532 U.S. 318 (2001).

[6]*Id.* at 323-24.

[7]*Id.*

[8]*Id.* at 354.

[9]*Id.* at 352.

[10]*Id.*

[11]*Id.*

[12]*Id.* (citing Ala. Code § 32-1-4 (1999); Cal. Veh. Code Ann. § 40504 (West 2000); Ky. Rev. Stat. Ann. §§ 431.015(1), (2) (Michie 1999); La. Rev.

The *Atwater* dissent criticized the majority's opinion stating that providing "officers constitutional carte blanche to effect an arrest whenever there is probable cause to believe a fine-only misdemeanor has been committed is irreconcilable with the Fourth Amendment's command that seizures be reasonable."[13] The dissent further states,

> The majority gives a brief nod to this bedrock principle of our Fourth Amendment jurisprudence [that a full custodial arrest is a severe intrusion on an individual's liberty, the reasonableness of which hinges upon the need to promote legitimate governmental interests], and even acknowledges that "Atwater's claim to live free of pointless indignity and confinement clearly outweighs anything the City can raise against it specific to her case." But instead of remedying this imbalance, the majority allows itself to be swayed by the worry that "every discretionary judgment [by police] in the field [will] be converted into an occasion for constitutional review." It therefore mints a new rule that . . . is not only unsupported by our precedent, but runs contrary to the principles that lie at the core of the Fourth Amendment.[14]

In Nevada, the Legislature has not forbidden warrantless arrests for minor traffic offenses. NRS 484.795 requires officers to perform an arrest in certain situations[15] and provides the officer with discretion to make an arrest or issue a citation in all other situations.[16] The discretionary provision of NRS 484.795 states that when a "person is halted by a peace officer for any violation of [NRS Chapter 484] and is not required to be taken before a magistrate, the person may, in the discretion of the peace officer, either be given a traffic citation, or be taken without unnecessary delay before the proper magistrate." The discretionary provision applies

---

Stat, Ann. § 32:391 (West 1989); Md. Transp. Code Ann. § 26-202(a)(2) (1999); S.D. Codified Laws § 32-33-2 (1998); Tenn. Code Ann. § 40-7-118(b)(1) (1997); Va. Code Ann. § 46.2-936 (Supp. 2000)).

[13]*Atwater,* 532 U.S. at 365-66 (O'Connor, J., dissenting).

[14]*Id.* at 361-62 (citations omitted) (O'Connor, J., dissenting).

[15]The mandatory arrest procedures pertinent to this case are invoked when the driver provides insufficient identification or when the officer has reasonable grounds to conclude that the cited driver will not appear in court to respond to the citation or when the individual is charged with driving under the influence. NRS 484.795(1), (4). The officer's discretion to formally arrest is implicated when the above mandatory requirements are not met; that is, absent insufficient identification, if there is not a reasonable belief that the cited driver will not appear in court or is under the influence, the officer is statutorily empowered with discretion to arrest or cite the driver.

[16]The case before us is distinguishable from *Collins v. State,* 113 Nev. 1177, 946 P.2d 1055 (1997), and *Ortega v. Reyna,* 114 Nev. 55, 953 P.2d 18 (1998), which were decided based on the mandatory provision of NRS 484.795.

246 of M

to the instant case. Bayard was stopped and arrested by Officer Sceirine for making an illegal left turn and lane change, violations of the Reno Municipal Traffic Code. He was cooperative, provided adequate identification, and was not under the influence of alcohol or a controlled substance. There is also no indication in the record that Officer Sceirine claimed a reasonable basis for concluding that Bayard would not respond to a traffic summons in municipal court. Thus, the mandatory provisions of NRS 484.795 do not apply.

The primary issue is whether Officer Sceirine abused his discretion by performing a full custodial arrest under the circumstances. Although the Legislature has given officers ''discretion'' in determining when to issue a citation or make an arrest for a traffic code violation, that discretion is not unfettered. Discretion ''means power to act in an official capacity in a manner which appears to be *just and proper* under the circumstances.''[17] It also ''means the capacity to distinguish between what is *right and wrong,* lawful or unlawful, *wise or foolish,* sufficiently to render one amenable and responsible for his acts.''[18] An officer abuses his or her discretion when the officer exercises discretion in an arbitrary or unreasonable manner.

Both the Fourth Amendment of the United States Constitution and Article 1, Section 18 of the Nevada Constitution provide citizens with a right ''to be secure in their persons, houses, papers and effects against unreasonable seizures and searches.'' ''Although the Nevada Constitution and the United States Constitution contain similar search and seizure clauses, the United States Supreme Court has noted that states are free to interpret their own constitutional provisions as providing greater protections than analogous federal provisions.''[19] Further, ''[w]e are under no compulsion to follow decisions of the United States Supreme Court which considers such [conduct] in connection with the federal constitution.''[20] This means that states may expand the individual rights of their citizens under state law beyond those provided under the Federal Constitution.

---

[17]*Black's Law Dictionary* 419 (5th ed. 1979) (emphasis added).

[18]*Id.* (emphasis added).

[19]*Osburn v. State,* 118 Nev. 323, 325-26, 44 P.3d 523, 525 (2002); *see also Arkansas v. Sullivan,* 532 U.S. 769, 772 (2001) (explaining states may restrict police power under state law to a greater degree than the Supreme Court holds is necessary under the Federal Constitution); *California v. Greenwood,* 486 U.S. 35, 43 (1988) (holding that ''[i]ndividual States may . . . construe their own constitutions as imposing more stringent constraints on police conduct than does the Federal Constitution'').

[20]*Zale-Las Vegas v. Bulova Watch,* 80 Nev. 483, 502, 396 P.2d 683, 693 (1964).

We hold that an arrest made in violation of NRS 484.795 violates a suspect's right to be free from unlawful searches and seizures under Article 1, Section 18, even though the arrest does not offend the Fourth Amendment. An officer violates NRS 484.795 if the officer abuses his or her discretion in making a full custodial arrest instead of issuing a traffic citation. We adopt the test set forth by the Montana Supreme Court in *State v. Bauer*[21] for determining the proper exercise of police discretion to arrest under NRS 484.795. To make a valid arrest based on state constitutional grounds, ''an officer's exercise of discretion must be reasonable.''[22] Reasonableness requires probable cause that a traffic offense has been committed and circumstances that require immediate arrest. Absent special circumstances requiring immediate arrest, individuals should not be made to endure the humiliation of arrest and detention when a citation will satisfy the state's interest. Such special circumstances are contained in the mandatory section of NRS 484.795 or exist when an officer has probable cause to believe other criminal misconduct is afoot. This rule will help minimize arbitrary arrests based on race, religion, or other improper factors and will benefit law enforcement by limiting the high costs associated with arrests for minor traffic offenses.

In applying this test, we hold that Officer Sceirine abused his discretion because he had no legitimate reason to subject Bayard to the humiliation of a full custodial arrest instead of issuing him a citation. Bayard was cooperative at all times, provided the customary identification, volunteered that he was carrying a concealed weapon and furnished a valid permit, and even agreed to a search of his person for potential drugs and other weapons. The officer was not permitted to arrest Bayard based on a ''hunch'' or ''whim'' that Bayard was engaged in other illegal activity that might be revealed through a subsequent strip search or car search. The arrest was unlawful and violated Bayard's state constitutional right to be free from an unlawful search or seizure.

The granting of a motion to suppress ''preclude[s] the introduction of evidence at trial which is claimed to be inadmissible for constitutional reasons, and is the remedy contemplated by our criminal code.''[23] While in jail, Bayard was strip searched and narcotics were found on his person. He was then prosecuted for

---

[21]36 P.3d 892 (Mont. 2001).

[22]*Id.* at 896.

[23]*Cook v. State,* 85 Nev. 692, 694-95, 462 P.2d 523, 526 (1969).

possessing and trafficking illegal drugs. Bayard filed a pretrial motion to suppress the evidence claiming the arrest was unlawful. The district court approved the motion to suppress and the State appeals. We agree the illegal drugs must be excluded from evidence because they were the product of an unlawful search and seizure in violation of Bayard's state constitutional rights.

## CONCLUSION

We conclude that NRS 484.795 governs an officer's ability to arrest an individual or issue the individual a citation for violating Nevada's traffic code. NRS 484.795 contains both a mandatory provision and a discretionary provision. We limit our holding to the discretionary provision. Under the discretionary provision, an officer has discretion to arrest an individual or issue the individual a traffic citation for committing a traffic violation. The officer's discretion is not unfettered, however, and may be abused if exercised in an unreasonable manner. We further conclude that if an officer abuses his discretion, the resulting arrest is in violation of Article 1, Section 18 of the Nevada Constitution.

We affirm the district court's order suppressing the illegal narcotics found on Bayard's person during the subsequent search and seizure because no special circumstances warranting an arrest were presented to the district court and the use of the fruits of the improper arrest implicated the Nevada Constitution.