2006-NMCA-052

134 P.3d 800

**STATE of New Mexico,**
**Plaintiff–Appellee,**

v.

**John BRICKER, Defendant–Appellant.**

**No. 24,719.**

Court of Appeals of New Mexico.

March 16, 2006.

Certiorari Granted, No. 29,751,
May 1, 2006.

Patricia A. Madrid, Attorney General, Ann M. Harvey, Assistant Attorney General, Santa Fe, NM, for Appellee.

John Bigelow, Chief Public Defender, Jennifer Byrns, Assistant Appellate Defender, Santa Fe, NM, for Appellant.

## OPINION

SUTIN, Judge.

{1} Defendant John Bricker appeals the denial of his motion to suppress evidence found in his wallet as he was being booked at the police station. He was taken to the police station after having been arrested for driving on a suspended license. The arresting officer observed Defendant driving and knew that Defendant's license had been suspended. After stopping Defendant, the officer confirmed that the license had been suspended.

{2} We first address whether the custodial arrest was lawful. A New Mexico Statute requires a citation and release under the circumstances here. We hold that the custodial arrest was unlawful. We then address whether the unlawful custodial arrest was a constitutionally unreasonable seizure, requiring suppression of the evidence obtained from the search of Defendant's wallet. We hold that the seizure was unreasonable under the New Mexico Constitution and, therefore, the ensuing search during booking was un-

lawful and the evidence from the search should have been suppressed as the fruit of an unreasonable seizure.

## BACKGROUND

{3} Believing that Defendant's driver's license had been suspended, Officer Izzy Johnson stopped Defendant on suspicion of driving with a suspended license. Defendant could not produce a driver's license and Officer Johnson was informed by radio dispatch that the license was suspended. The officer arrested Defendant for driving on a suspended license and took him to the police station for booking.[1] Booking procedures included taking Defendant's personal property. While removing and going through Defendant's wallet, the detention officer found a loaded syringe. The contents tested positive for methamphetamine and Defendant was charged with possession of methamphetamine and possession of drug paraphernalia.

{4} Defendant moved to suppress the evidence as fruit of an unreasonable seizure under the Fourth Amendment to the United States Constitution and Article II, Section 10 of the New Mexico Constitution. At the suppression hearing, Defendant argued that under NMSA 1978, §§ 66-8-122 (1985) and 66-8-123 (1989), Officer Johnson was not authorized to arrest him and take him to the police station to be booked for driving on a suspended license, but rather required the officer to issue him a citation and release him from custody. Defendant further argued that the detention was therefore unlawful, requiring suppression of the drug-related evidence.

{5} Section 66-8-122 requires a person who is arrested for driving on a suspended license to be immediately taken before a magistrate if the person's license was suspended pursuant to certain laws relating to driving while intoxicated (DWI). § 66-8-122(G). However, when the suspension is not pursuant to those DWI-related laws, Sec-

---

1. The arrest was pursuant to a municipal ordinance which purportedly permitted the officer to arrest Defendant and take him to the station. The ordinance was not made a part of the record. Further, the issue on appeal regarding the validity and constitutionality of the custodial arrest of Defendant does not require development

of or decision in regard to the apparent conflict between the ordinance and the State Statutes that control the issue before us. The State does not contend that the ordinance controls or takes precedence in determining the validity or constitutionality of the custodial arrest.

tion 66–8–123 requires the arresting officer to release the violator from custody after the officer issues a citation pursuant to which the driver agrees to appear in court. § 66–8–123(A).

{6} The State did not offer evidence at the suppression hearing of the basis on which Defendant's license was suspended. Thus, there is no evidence in the record that Officer Johnson knew the basis on which Defendant's license had been suspended when he stopped Defendant or when he arrested Defendant and took him to the police station.

{7} There was no issue in the district court as to the validity of the traffic stop. The district court denied Defendant's motion to suppress. Defendant entered a conditional plea and appealed the court's ruling. The issues are legal questions which we review de novo. *State v. Rodarte*, 2005–NMCA–141, ¶ 5, 138 N.M. 668, 125 P.3d 647, *cert. granted*, 2005–NMCERT–012, 138 N.M. 773, 126 P.3d 1137.

**The Lawfulness of the Custodial Arrest Under State Statute**

{8} Sections 66–8–122 and –123 delineate an officer's authority to arrest and detain when, as in the present case, the traffic-related stop is grounded on the violation of driving on a suspended license. As it relates to a suspended license, Section 66–8–122 reads:

Whenever any person is arrested for any violation of the Motor Vehicle Code ... or other law relating to motor vehicles punishable as a misdemeanor, he shall be immediately taken before an available magistrate who has jurisdiction of the offense when the:

...

G. person is charged with driving when his privilege to do so was suspended or revoked pursuant to Section 66–8–111 NMSA 1978 [relating to refusal to submit to a breath test for DWI purposes] or pursuant to a conviction for driving while under the influence of intoxicating liquor or drugs.

It is a violation of the Motor Vehicle Code to drive on a suspended license. NMSA 1978,

§ 66–5–39(A) (1993). Section 66–8–123(A) reads:

Except as provided in Section 66–8–122 NMSA 1978, unless a penalty assessment or warning notice is given, whenever a person is arrested for any violation of the Motor Vehicle Code ... or other law relating to motor vehicles punishable as a misdemeanor, the arresting officer, using the uniform traffic citation, shall complete the information section and prepare a notice to appear in court, specifying the time and place to appear, have the arrested person sign the agreement to appear as specified, give a copy of the citation to the arrested person and release him from custody.

An officer who violates Section 66–8–123 "is guilty of a misconduct in office and is subject to removal." § 66–8–123(E).

{9} While the statute uses the words "arrest" and "custody," we believe the Legislature intended those terms to refer to a temporary detention rather than a traditional custodial arrest in which a person is arrested and taken to the police station for booking. *See United States v. Gonzalez*, 763 F.2d 1127, 1130 n. 1 (10th Cir.1985) (discussing Sections 66–8–122 and 66–8–123 and the use of the words "arrest" and "custody" in Section 66–8–123(A), and stating, "[d]espite the statute's use of the words 'arrest' and 'custody,' when a New Mexico police officer stops a car merely to issue a traffic summons for a minor speeding infraction, we think that for Fourth Amendment purposes that stop is more in the nature of an investigative detention than a traditional [custodial] arrest"); *State v. Reynolds*, 119 N.M. 383, 388, 890 P.2d 1315, 1320 (1995) (holding that continued detention in a traffic stop to request, review, and check a motorist's license, registration, and insurance documentation is not unreasonable and does not violate the Fourth Amendment or Article II, Section 10 of the New Mexico Constitution).

{10} Section 66–8–122 lists several circumstances in addition to that in Subpart G that require a person to be taken before a magistrate. As we pointed out earlier in this opinion, no evidence exists in the record that Officer Johnson knew at the time he arrested Defendant and took Defendant to the police

station for booking whether Defendant's license suspension was DWI-related. Nor was there evidence of any other circumstance listed in the statute requiring that Defendant be taken before a magistrate.

■■■ {11} The State attempts to change that focus by arguing that Defendant had the burden to show the reason for the suspension of his license as a condition precedent to arguing that the custodial arrest was unlawful under Section 66–8–123(A). We are unpersuaded. It is true that a defendant has the burden of establishing that a seizure or search is unlawful in order to suppress the fruits of an unlawful seizure or search. *See State v. Ponce*, 2004–NMCA–137, ¶ 7, 136 N.M. 614, 103 P.3d 54 (stating that a defendant moving to suppress has the burden to come forward with evidence to raise an issue as to an illegal search and seizure), *cert. granted*, 2004–NMCERT–012, 136 N.M. 666, 103 P.3d 1098. However, under the circumstances in this case, the State had the burden to justify the custodial arrest by showing that the arrest and detention were mandated by Section 66–8–122(G); otherwise, the State bore the consequences of the officer's wrongful custodial arrest in violation of Section 66–8–123(A). *See Ponce*, 2004–NMCA–137, ¶ 7, 136 N.M. 614, 103 P.3d 54 ("In the face of a defendant's challenge to the constitutionality of a warrantless arrest or search, the State is required to present testimony or other evidence showing that the arrest or search met constitutional muster.").

{12} Further, we reject the State's attempt to override Section 66–8–123(A) by contending that NMSA 1978, § 66–8–127 (1978) absolves an officer of the mandates in Section 66–8–123(A). Section 66–8–127 reads:

> Sections 66–8–122 through 66–8–125 NMSA 1978 govern all police officers in making arrests without warrant for violations of the Motor Vehicle Code … and other laws relating to motor vehicles, but the procedure prescribed is not exclusive of any other method prescribed by law for the arrest and prosecution of a person violating these laws.

The State argues that this section evinces a legislative intent not to supplant the common law misdemeanor arrest rule for traffic violations. Thus, according to the State, the requirements in Section 66–8–123(A) regarding issuance of a citation and release from custody are inapplicable whenever an officer observes a driver violate any misdemeanor covered in the Motor Vehicle Code. Again, we are unpersuaded. The State's interpretation of Section 66–8–127 renders the citation and release from custody mandates in Section 66–8–123(A) virtually meaningless. *See State v. Herbstman*, 1999–NMCA–014, ¶¶ 18, 20, 126 N.M. 683, 974 P.2d 177 (stating that "[w]e presume the legislature was informed as to existing law and did not intend to enact a law inconsistent with other law[,]" that "[w]e will reject an interpretation of a statute that makes parts of it … meaningless[,]" and we "will not render a legislative enactment meaningless").

{13} Furthermore, we are unaware of any strong government policy, and the State does not argue one, that would call for Section 66–8–127 to come into play and override Section 66–8–123(A) to permit an officer to engage in a custodial arrest, rather than to merely cite and release, simply because the officer knew before stopping the driver that the driver was driving with a suspended license. Given the careful and mandatory language in Sections 66–8–122(G) and 66–8–123(A) and (E), we do not believe the Legislature intended to give police officers unbridled discretion to either arrest and book a driver or merely cite and release the driver.

■■ {14} We hold that Officer Johnson was authorized, pursuant to Section 66–8–123(A), only to issue Defendant a citation and release him. The officer was not authorized to make a traditional custodial arrest, that is, to arrest Defendant and take him to the police station for booking. The custodial arrest of Defendant violated Section 66–8–123(A) and was therefore unlawful. However, this holding alone does not resolve the question of whether the evidence obtained from the search of Defendant's wallet should have been suppressed. That question requires an analysis of whether the unlawful custodial arrest violated the Fourth Amendment to the United States Constitution or Article II, Section 10 of our State Constitu-

tion. *Cf. State v. Wilson,* 92 N.M. 54, 55–56, 582 P.2d 826, 827–28 (Ct.App.1978) (stating that a right to refuse the taking of blood may be an enlargement of a constitutional right, and holding that whether it was or not an enlargement of a constitutional right, the right was granted by the Legislature and violation of the statute granting the right required exclusion of the blood sample).

## The Constitutional Reasonableness of the Seizure

{15} The Fourth Amendment and Article II, Section 10 of the New Mexico Constitution "simply state[ ] a right-the right to be free from unreasonable searches and seizures." *State v. Gutierrez,* 116 N.M. 431, 444, 863 P.2d 1052, 1065 (1993). It is fundamental "that every person in this state is entitled to be free from unwarranted governmental intrusions." *Id.* "New Mexico courts interpret Article II, Section 10 … more broadly than its federal counterpart, and specifically appl[y] that broader protection to motorists." *State v. Cardenas–Alvarez,* 2001–NMSC–017, ¶ 15, 130 N.M. 386, 25 P.3d 225. "It is the duty of appellate courts to shape the parameters of police conduct by placing the constitutional requirement of reasonableness in factual context." *State v. Vandenberg,* 2003–NMSC–030, ¶ 19, 134 N.M. 566, 81 P.3d 19 (internal quotation marks and citation omitted).

{16} A routine traffic stop constitutes a seizure under the Fourth Amendment. *State v. Duran,* 2005–NMSC–034, ¶ 22, 138 N.M. 414, 120 P.3d 836; *State v. Reynolds,* 117 N.M. 23, 26, 868 P.2d 668, 671 (Ct.App. 1993), *rev'd on other grounds,* 119 N.M. 383, 890 P.2d 1315 (1995); *State v. Werner,* 117 N.M. 315, 317, 871 P.2d 971, 973 (1994) ("Stopping an automobile and detaining its occupants constitute a seizure under the Fourth and Fourteenth Amendments." (alteration, internal quotation marks, and citation omitted)). However only if the seizure is unreasonable is it constitutionally proscribed. *Id.* (stating that the Fourth Amendment only proscribes seizures that are unreasonable); *see also Duran,* 2005–NMSC–034, ¶ 22, 138 N.M. 414, 120 P.3d 836 (stating that "[t]raffic stops must … be conducted in a reasonable manner to satisfy the Fourth Amendment").

{17} In the present case, it is undisputed that the traffic stop, based on the officer's reasonable suspicion that Defendant was driving with a suspended license, and the detention to investigate the status of the license, were reasonable under the Fourth Amendment. *See id.* However, this traffic stop seizure and investigative detention to check the status of Defendant's license dramatically changed posture immediately upon Officer Johnson's custodial arrest of Defendant for driving with a suspended license. The question of the constitutional reasonableness of the initial traffic stop and de minimis detention disappeared from the radar screen, supplanted by the question of the constitutional reasonableness of the custodial arrest of Defendant for driving with a suspended license.

{18} The State opens its argument to affirm the denial of Defendant's suppression motion by pointing out New Mexico's well-established common law misdemeanor arrest rule. Under that rule, a police officer is authorized to arrest a person violating a misdemeanor traffic law in the officer's presence. *See State v. Gutierrez,* 76 N.M. 429, 430, 415 P.2d 552, 553 (1966) (holding that police officers were justified in arresting driver without a warrant when officers knew before the arrest that the driver was driving with a revoked license, because the violation was committed in the officers' presence); *Cave v. Cooley,* 48 N.M. 478, 481, 152 P.2d 886, 888 (1944) ("It is the well-established doctrine now throughout the United States that for a crime, which they have probable cause to believe is being committed in their presence, though it be a misdemeanor, duly authorized peace officers may make arrest without a warrant." (internal quotation marks and citation omitted)).

{19} Based on an arrest that conforms to the misdemeanor arrest rule, the State argues that Defendant failed to establish the existence of a constitutional violation, thereby eliminating application of the exclusionary rule that would bar evidence as the poisonous fruit of an unconstitutional arrest. The State also argues that an arrest in violation of a

statute does not elevate the issue to a constitutional level. *See People v. Lyon*, 227 Mich. App. 599, 577 N.W.2d 124, 129 (1998) (hold that the exclusionary rule is "only applicable . . . if the seizure was constitutionally invalid," based on a lack of probable cause, and "not merely statutorily illegal"); *State v. Eubanks*, 283 N.C. 556, 196 S.E.2d 706, 708–09 (1973) (holding evidence obtained following arrest which is constitutionally valid as based on probable cause but unlawful under state law need not be excluded under the federal exclusionary rule); *Penn v. Commonwealth*, 13 Va.App. 399, 412 S.E.2d 189, 193–94 (1991) (holding that there is no constitutional violation requiring exclusion of evidence where police officers arrest a person in violation of a state statute that adopts a more stringent standard for arrests than the probable cause standard under the Federal Constitution).

{20} We do not find the State's arguments and authorities persuasive. New Mexico's Constitution and laws compel the conclusion that the seizure of Defendant by custodial arrest fails the test of constitutional reasonableness under Article II, Section 10. Under the circumstances here, two rationales dovetail to support this conclusion. First, the purpose underlying Section 66–8–123(A) is to protect liberty and privacy in circumstances in which the violation of law does not warrant a custodial arrest. Second, Article II, Section 10 provides the broader privacy protection needed.

■ {21} Were we to be guided solely by federal law interpreting the Fourth Amendment, the custodial arrest of Defendant would be reasonable. Under the Fourth Amendment, the constitutional reasonableness of a custodial arrest is measured by whether probable cause existed for the arrest. *See Atwater v. City of Lago Vista*, 532 U.S. 318, 354, 121 S.Ct. 1536, 149 L.Ed.2d 549 (2001) (confirming that the standard of probable cause applies to all arrests and holding that the Fourth Amendment does not proscribe any arrest made with probable cause). In *Atwater*, the United States Supreme Court held that under the Fourth Amendment a warrantless custodial arrest based only on probable cause of a mere seatbelt violation, for which jail time was not

authorized, was permissible. *Id.* The Court preferred to remain with what it considered the traditional probable cause standard for constitutional reasonableness, rather than to "mint a new rule of constitutional law on the understanding that when historical practice fails to speak conclusively to a claim grounded on the Fourth Amendment, courts are left to strike a current balance between individual and societal interests by subjecting particular contemporary circumstances to traditional standards of reasonableness." *Id.* at 345–46, 121 S.Ct. 1536. Thus, the United States Supreme Court held fast with probable cause as the test of reasonableness, "without the need to balance the interests and circumstances involved in particular situations." *Id.* at 354, 121 S.Ct. 1536 (internal quotation marks and citation omitted). And the Court ultimately held that the arrest of the defendant satisfied constitutional requirements, stating: "If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." *Id.*

{22} In *Atwater*, Justice O'Connor dissented, disagreeing that the constitutional propriety of the custodial arrest, which she characterized as "the quintessential seizure," should be limited to whether probable cause existed. *See id.* at 360–62, 121 S.Ct. 1536 (O'Connor, J., dissenting). In Justice O'Connor's view, the reasonableness inquiry required not only a determination of the existence of probable cause, but also an evaluation of the seizure under the standard rejected by the majority, namely, by assessing the intrusion upon individual privacy against the need to promote legitimate governmental interests. *Id.* at 361, 121 S.Ct. 1536.

{23} In *Rodarte*, this Court refused to follow the majority's decision in *Atwater*, preferring instead to follow Justice O'Connor's dissent. *See Rodarte*, 2005–NMCA–141, ¶¶ 1, 15, 138 N.M. 668, 125 P.3d 647. We held:

that, under Article II, Section 10, probable cause that a non-jailable offense has been committed does not automatically make arrest reasonable, and that for such arrests

to be reasonable, there must be specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [the additional] intrusion of a full custodial arrest.

*Id.* ¶ 14 (internal quotation marks and citation omitted) (alteration in original). Several state courts have distanced themselves from *Atwater. See State v. Bauer,* 307 Mont. 105, 36 P.3d 892, 897 (2001) (holding that under the Montana Constitution, it was unreasonable for a police officer to effect a custodial arrest for a non-jailable offense absent special circumstances); *State v. Bayard,* 119 Nev. 241, 71 P.3d 498, 501–02 (2003) (applying the Nevada Constitution to affirm the suppression of evidence, holding that an arrest for a minor traffic violation violated the state statute giving an officer discretion to cite or arrest an offender, where the officer abused his discretion in performing a full custodial arrest, and stating "[a]bsent special circumstances requiring immediate arrest, individuals should not be made to endure the humiliation of arrest and detention when a citation will satisfy the state's interest"); *State v. Brown,* 99 Ohio St.3d 323, 792 N.E.2d 175, 178–79 (2003) (applying the Ohio Constitution which provided greater protection than the Fourth Amendment and holding that arrest of jaywalker violated the constitutional provision against unreasonable seizures where the arresting officer violated a state statute). Pre-*Atwater* cases are also supportive. *See also State v. Toevs,* 327 Or. 525, 964 P.2d 1007, 1015 (1998) (en banc) (holding the detention of a defendant to be a violation of a statute relating to a traffic infraction, and requiring the suppression of evidence discovered following the unlawful detention "[b]ecause the object of [the statute] is to define the authority of officers to respond to a traffic infraction" and, in order to give effect to the statute, "denying the state the use of evidence that it would not have secured if its officer had respected the rights that the statute was designed to protect" (internal quotation marks, citations, and emphasis omitted)); *State v. Valdez,* 277 Or. 621, 561 P.2d 1006, 1011 (1977) (invoking the sanction of exclusion of evidence obtained after police arrested the defendant in violation of a statute governing the officer's authority to stop and interrogate a person concerning the possible commission of certain crimes).

{24} In addressing the custodial arrest at issue in *Rodarte,* we applied Article II, Section 10 in order to provide greater protection than the Federal Constitution provides to misdemeanor traffic violators where the infraction is punishable by fine and not jail. *Rodarte,* 2005–NMCA–141, ¶¶ 15–16, 21, 138 N.M. 668, 125 P.3d 647. Significantly, *Rodarte* adopted a test that required officers to "articulate a legitimate reason for the decision to escalate the seizure into a full custodial arrest." *Id.* ¶¶ 9, 16 (internal quotation marks and citation omitted). "[W]hen an individual has not committed an offense that our Legislature has deemed significant enough to warrant a loss of liberty, that individual should not be deprived of his or her liberty through arrest unless there is a legitimate reason for the deprivation." *Id.* ¶ 20. The ultimate disposition in *Rodarte* was to overturn a conviction that was based on evidence that should have been suppressed.

{25} Further, in *Rodarte,* as in Justice O'Connor's dissent in *Atwater,* upon balancing governmental and individual interests, little weight was given to the *Atwater* majority's concern about an officer's ability to decide on the spot what was and was not a jailable offense. *See Rodarte,* 2005–NMCA–141, ¶¶ 15–16, 138 N.M. 668, 125 P.3d 647. Importantly, the controlling statute in the present case, Section 66–8–123(A), requires an officer to make an on-the-spot decision whether a misdemeanor traffic offense comes within the exceptions listed in Section 66–8–122. Thus, our Legislature has indicated an intent that, with respect to misdemeanors covered in these statutes, and, implicitly, irrespective of whether the misdemeanor is a jailable or non-jailable offense, the officer must make a decision, at the time of the traffic stop and based on any permitted de minimis computer check, whether the driver's violation is one requiring citation and release or one requiring custodial arrest.

{26} As in *Rodarte,* we think Justice O'Connor's reasoning was correct and we are not, in the present case, restricted by *Atwa-*

*ter's* interpretation of constitutional reasonableness under the Fourth Amendment. Our appellate courts have preferred a balancing-of-interests test for reasonableness, rather than a bright-line test. *See Rodarte,* 2005–NMCA–141, ¶¶ 14–15, 138 N.M. 668, 125 P.3d 647; *see also Duran,* 2005–NMSC–034, ¶ 34, 138 N.M. 414, 120 P.3d 836 ("Our case law has consistently disfavored a bright-line test in analyzing Fourth Amendment questions."); *Werner,* 117 N.M. at 317, 871 P.2d at 973 ("A bright line test does not exist to evaluate whether an investigatory seizure is invasive enough to constitute an arrest requiring probable cause."). Our courts have approved a balancing-of-interests standard in several search and seizure cases. *See Duran,* 2005–NMSC–034, ¶ 34, 138 N.M. 414, 120 P.3d 836; *Vandenberg,* 2003–NMSC–030, ¶ 23, 134 N.M. 566, 81 P.3d 19; *State v. Jason L.,* 2000–NMSC–018, ¶ 14, 129 N.M. 119, 2 P.3d 856; *Reynolds,* 119 N.M. at 385, 890 P.2d at 1317; *Werner,* 117 N.M. at 317, 871 P.2d at 973; *Rodarte,* 2005–NMCA–141, ¶ 14, 138 N.M. 668, 125 P.3d 647; *State v. Jones,* 114 N.M. 147, 150, 835 P.2d 863, 866 (Ct.App.1992) (stating that the Fourth Amendment establishes a reasonableness standard that permits lesser intrusion without warrants, based on a balance of "the degree of intrusion into an individual's privacy against the interest of the government in promoting crime prevention and detection"). Thus, while probable cause is essential to the constitutionality of the custodial arrest in the present case, it is not the sole factor to be applied in the constitutional inquiry. We hold, as to the custodial arrest here, that it is appropriate to apply the balance-of-interests standard.

{27} We acknowledge that we are faced in this case with a jailable offense and not a fine-only offense such as in *Atwater* and *Rodarte.* *See* NMSA 1978, § 66–5–39(A) (1993) (stating that the crime of driving on a suspended license carries a mandatory sentence of a minimum of four days in jail and up to 364 days in jail, although the sentence can be suspended). However, that alters nothing. Our Legislature has stated in no uncertain terms that persons who violate a misdemeanor covered in Section 66–8–123(A) shall be cited and released from custody. That the

traffic offense is jailable is irrelevant. Jailability cannot justify overlooking an unlawful custodial arrest and permitting searches based on the unlawful arrest. The intrusion upon one's liberty is no less significant in cases in which the offense is jailable than in cases in which the offense is non-jailable. While the Legislature has assigned greater punishment for some traffic misdemeanors than others, the Legislature has not indicated any particular distinction on the basis of punishment in regard to loss of liberty.

{28} It seems obvious from Sections 66–8–122(G) and 66–8–123(A) that our Legislature required more than merely driving with a suspended license to warrant the loss of liberty occasioned by custodial arrest, as long as the suspension is not DWI-related. We see no reason to think that the Legislature intended to leave a driving with a suspended license offense open to a custodial arrest that escapes constitutional scrutiny.

{29} That the Legislature has zeroed in on the traffic offense at issue here and has only required citation and release is evidence of an intent to protect individual liberty over perceived governmental need. This has constitutional bearing. *See Bingham v. City of Manhattan Beach,* 341 F.3d 939, 950 (9th Cir.2003) (determining that, in evaluating a custodial arrest for a traffic offense, including an unlicensed driver violation, "federal courts must determine the reasonableness of the arrest in reference to state law governing the arrest" (internal quotation marks and citation omitted)); *United States v. Mota,* 982 F.2d 1384, 1388–89 (9th Cir.1993) (holding that custodial arrest for a minor infraction to be unlawful under California law, that the unlawful arrest was unreasonable and therefore unlawful under the Fourth Amendment, that the search incident to the arrest was not therefore exempt from the warrant requirement of the Fourth Amendment, and that the evidence from the search was unlawfully obtained and should have been suppressed). It fits well within the constitutional reasonableness standard our courts often turn to in constitutional seizure inquiries.

{30} Therefore, for the reasons set out in this opinion, we hold the custodial arrest in

this case was unreasonable and the seizure was unconstitutional under Article II, Section 10 of the New Mexico Constitution. Defendant's motion to suppress should have been granted and the evidence obtained from the search of Defendant's wallet should have been excluded as poisonous fruit of an unconstitutional seizure. *See State v. Prince*, 2004–NMCA–127, ¶¶ 20–21, 136 N.M. 521, 101 P.3d 332 (holding exclusionary rule should be employed to suppress evidence obtained after unlawful detention irrespective of consent to search); *State v. Gutierrez*, 2004–NMCA–081, ¶ 6, 136 N.M. 18, 94 P.3d 18 (stating that under the exclusionary rule unconstitutionally obtained evidence is inadmissible at trial).

**CONCLUSION**

{31} We reverse the district court's denial of Defendant's motion to suppress.

{32} **IT IS SO ORDERED.**

WE CONCUR: A. JOSEPH ALARID and IRA ROBINSON, Judges.