IN  THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date:  July 3, 2014

Docket No. 33,008

STATE OF NEW MEXICO,

　　　Plaintiff-Appellee,

v.

RONALD SANCHEZ,

　　　Defendant-Appellant.

APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY
Michael E. Vigil, District Judge

Gary K. King, Attorney General
Santa Fe, NM
Sri Mullis, Assistant Attorney General
Albuquerque, NM

for Appellee

Ben A. Ortega
Albuquerque, NM

for Appellant

OPINION

WECHSLER, Judge.

{1}　　Defendant Ronald Sanchez was arrested by a Tesuque Pueblo police officer on property of the Tesuque Pueblo and charged in Santa Fe County Magistrate Court with aggravated driving while under the influence of intoxicating liquor or drugs (DWI), first offense, contrary to NMSA 1978, Section 66-8-102 (2010).  The officer was cross-commissioned as a Santa Fe County special deputy sheriff.  His salary was paid by the Tesuque Pueblo Police Department, and it included incremental pay financed from a grant to assist the department in targeting the motoring public.  On appeal to the district court,

1

Defendant was again convicted. He appeals his conviction to this Court, contending that the district court (1) erred in denying his motion to suppress by holding that the tribal officer who conducted the arrest was properly cross-commissioned and had authority to arrest Defendant under the Motor Vehicle Code; and (2) erred in denying Defendant's defense, pursuant to NMSA 1978, Section 66-8-137(B) (1978), and holding that the tribal officer did not have financial incentive motivating his arrest of Defendant. We hold that (1) the tribal officer was properly cross-commissioned and could properly arrest Defendant while wearing the uniform of and receiving his salary from the Tesuque Pueblo Police Department, and (2) the tribal officer's receipt of pay from a grant and his obligation under the grant to make monthly statistical reports did not give rise to a defense under Section 66-8-137(B). We affirm Defendant's conviction.

**BACKGROUND**

**{2}**     There does not appear to be any dispute as to the facts. Defendant is presumably a non-Indian, charged with his first offense of DWI. Defendant was in the parking lot of Camel Rock Casino, within the territorial boundaries of Tesuque Pueblo in Santa Fe County, New Mexico, when either his "vehicle came into contact with another vehicle . . . while in the process of parking[,]" or he "crashed his car into a parked car." In either event, Officer Joe Vigil of the Tesuque Pueblo Police Department arrived at the scene, determined that alcohol appeared to be present, conducted a DWI investigation, arrested Defendant, and ultimately charged Defendant with aggravated DWI in Santa Fe County Magistrate Court.

**{3}**     The magistrate court conducted a bench trial, and Defendant was convicted of aggravated DWI, first offense. Defendant appealed the conviction to the First Judicial District Court. In the district court, Defendant filed a motion to suppress, arguing that Officer Vigil was not properly cross-commissioned by the Santa Fe County Sheriff's Office and, therefore, had no authority to arrest Defendant. The district court denied Defendant's motion to suppress, and the parties proceeded to a bench trial. During the trial, Defendant argued that, because the Tesuque Pueblo Police Department participated in a grant program that included a requirement that Officer Vigil report on citations and arrests relevant to the Motor Vehicle Code, Officer Vigil's compensation depended "in a way" on his arrests for Motor Vehicle Code violations, and Defendant should be acquitted in accordance with the defense afforded by Section 66-8-137(B) (providing a defense to defendants if the compensation of the arresting officer depends in any way upon the arrest or conviction). The district court denied Defendant's oral motion and found Defendant guilty of aggravated DWI. Defendant timely filed a notice of appeal.

**CROSS-COMMISSION AND AUTHORITY TO ARREST**

**{4}**     The first issue Defendant raises is whether Officer Vigil was properly cross-commissioned by the Santa Fe County Sheriff and, therefore, authorized to arrest Defendant for DWI. Defendant argues that the Santa Fe County Sheriff failed to comply with the statutory commission and arrest requirements of the Motor Vehicle Code when he purported

to cross-commission Officer Vigil. Defendant therefore asserts that his motion to suppress the evidence gathered by and testimony of Officer Vigil should have been granted pursuant to Article II, Section 10 of the New Mexico Constitution, which protects against the use of evidence obtained pursuant to unreasonable search and seizure. *See State v. Gutierrez*, 1993-NMSC-062, ¶ 45, 116 N.M. 431, 863 P.2d 1052. Defendant argues both that Officer Vigil was not properly cross-commissioned as a special deputy and, more broadly, that no tribal officer could be properly cross-commissioned as a special deputy by any county sheriff unless the tribal officer was paid by the State of New Mexico and wore a New Mexico State Police Department uniform. We address Defendant's arguments below.

**Standard of Review**

**{5}** "A ruling on a motion to suppress evidence presents a mixed question of law and fact." *State v. Rivera*, 2008-NMSC-056, ¶ 10, 144 N.M. 836, 192 P.3d 1213. Our review is de novo. *State v. Attaway*, 1994-NMSC-011, ¶¶ 6-7, 117 N.M. 141, 870 P.2d 103.

**{6}** Although New Mexico courts have addressed various issues dealing with Indian and non-Indian defendants and officers and other circumstances of commissioning of officers, this appeal presents a novel inquiry. In this case, a victimless crime (DWI) was committed by a non-Indian in Indian Country, and the arresting officer was a tribal officer cross-commissioned by the Santa Fe County Sheriff's Office. It is well-settled that the state has jurisdiction over victimless crimes committed by non-Indians in Indian Country, including DWI offenses. *State v. Harrison*, 2010-NMSC-038, ¶ 14, 148 N.M. 500, 238 P.3d 869; *see also State v. Romero*, 2006-NMSC-039, ¶ 12, 140 N.M. 299, 142 P.3d 887 ("[P]ueblos are Indian [C]ountry."). *But see Branham*, 2004-NMCA-131, ¶¶ 9-10, 13 (stating that the state does not have authority to enforce *tribal* laws on tribal lands, absent a written agreement to the contrary). Indeed, Defendant does not dispute that a Santa Fe County law enforcement officer would have had authority to investigate the DWI and arrest Defendant. Rather, the dispute is whether Officer Vigil was properly cross-commissioned by the Santa Fe County Sheriff and, as such, authorized to make the arrest.

**Cross-Commissioning Deputies/Special Deputies**

**{7}** NMSA 1978, Section 4-41-5 (1975) authorizes sheriffs in all counties of New Mexico to appoint deputies. NMSA 1978, Section 4-41-10 (2006) authorizes the sheriff to appoint "regular or permanent deputy sheriff[s]," as well as "respectable and orderly persons as special deputies." Although Section 4-41-10 does not expressly mention whether a sheriff may appoint as special deputies individuals who are already full-time law enforcement officers of an Indian nation, tribe, or pueblo, such officers fall within the subset of the permitted "respectable and orderly persons" category and are, therefore, included. Moreover, the Legislature has indirectly recognized this authority. In enacting NMSA 1978, Section 29-1-11 (2005), the Legislature authorized duly commissioned officers of the police or sheriff's department of any New Mexico Indian nation, tribe, or pueblo to act as New Mexico peace officers when commissioned by the chief of the New Mexico State Police

3

according to procedures set forth in that statute. The Legislature specifically provided in Section 29-1-11(G) that nothing in Section 29-1-11 "limits, impairs or nullifies the authority of county sheriffs to appoint pursuant to Chapter 4, Article 41 NMSA 1978 duly commissioned state or federally certified officers who are employees of a police or sheriff's department *of an Indian nation, tribe or pueblo* in New Mexico" (emphasis added). *See also* N.M. Att'y Gen. Op. 57-83 (1957) ("[A] sheriff can commission as a special deputy sheriff a full-time law enforcement officer employed by a municipality, the Navajo Tribe or the Federal Government[, so long as t]he applicants . . . secure the appointment from the sheriff . . . and qualify in accordance with [New Mexico law] pertaining to the qualification of deputy sheriffs.").

**Cross-Commission of Officer Vigil as a Special Deputy for Santa Fe County**

{8}     No contention has been made by Defendant below or on appeal that Officer Vigil was not a "respectable and orderly person[ .]" Section 4-41-10. It is undisputed that Officer Vigil secured a written appointment from the Santa Fe County Sheriff. *See* NMSA 1978, § 29-1-9 (2006) (requiring an appointment in writing from a person authorized by law to appoint special deputy sheriffs in order to assume or exercise the "functions, power, duties, and privileges" of the position). Officer Vigil signed an oath of office, also signed by the Santa Fe County Sheriff, and carried a card issued by the Santa Fe County Sheriff's Office indicating Officer Vigil's cross-commissioning status. *See* § 29-1-9; N.M. Att'y Gen. Op. 57-83. It is also undisputed that Officer Vigil was a properly commissioned, full-time Tesuque Pueblo tribal officer. Therefore, Officer Vigil was properly commissioned as a special deputy for the Santa Fe County Sheriff's Office. What Officer Vigil was entitled to do as a special deputy for the Santa Fe County Sheriff's Office is a separate inquiry.

{9}     The scope of Officer Vigil's authority depends on the authority given to him by the Santa Fe County Sheriff. Section 4-41-10 states that special deputies, as appointed by a county sheriff, may serve a particular order, writ, or process or, if the sheriff has so deemed "necessary and required for the purpose of preserving the peace," may act as otherwise authorized. NMSA 1978, Section 4-41-9 (1855-1856) confirms that "[t]he said deputies are hereby authorized to discharge all the duties which belong to the office of sheriff, that may be placed under their charge by their principals[.]" *See Novak v. Dow*, 1970-NMCA-104, ¶¶ 5-7, 82 N.M. 30, 474 P.2d 712 (discussing the potential authority of a special deputy in accordance with Section 4-41-9 (citing its prior codification at NMSA 1953, Section 15-40-11 (1865), identical to the current statute), and holding that the special deputy had "such authority as had been conferred upon him by [the] Sheriff" and that "[t]he extent of [the special deputy]'s authority was a question of fact").

{10}     The Santa Fe County Sheriff testified in this case that he gave Officer Vigil the authority to enforce criminal and traffic laws, including DWI, within Santa Fe County. There was no conflicting evidence, and, consequently, Officer Vigil was authorized to investigate and arrest Defendant for any violations of DWI law occurring in Santa Fe County.

4

**Additional Requirements Unnecessary**

{11}    Defendant additionally argues that the Legislature has imposed several other requirements for proper cross-commissioning of officers that have not been met in this case. We address each of these arguments.

{12}    First, Defendant contends that Officer Vigil's commission was not valid because, even though he signed an oath of office, the oath of office was not filed. However, Section 4-41-10 expressly states that it is "not . . . necessary to give or file any notice of such special appointment[.]" No notice of Officer Vigil's cross-commissioning as special deputy needed to be given or filed regarding his appointment.

{13}    Second, Defendant argues that Officer Vigil was neither wearing a uniform nor paid the salary of a Santa Fe County deputy sheriff, and, therefore, he was not properly commissioned. However, as set forth above, neither of these requirements has been included in New Mexico statutory or case law for proper cross-commissioning of a special deputy. Although there are statutory requirements that an arresting officer be commissioned, salaried, and in uniform, the statutes do not specify that the uniform or the salary be from the cross-commissioning authority. NMSA 1978, Section 66-8-124(A) (2007) simply states that arrests for violations under the Motor Vehicle Code or other law relating to motor vehicles punishable as a misdemeanor must be made by "a commissioned, salaried peace officer who, at the time of arrest, is wearing a uniform clearly indicating the peace officer's official status." Similarly, under NMSA 1978, Section 66-8-125(C) (1978), members of the New Mexico State Police, sheriffs, and their salaried deputies and members of any municipal police force, may arrest without warrant any person present at the scene of a motor vehicle accident, but they "may not make arrest for traffic violations if not in uniform[.]" We note that traffic stops, as temporary detentions, are included within the term "arrest" as used in Section 66-8-124(A) and Section 66-8-125. *State v. Slayton*, 2009-NMSC-054, ¶ 20, 147 N.M. 340, 223 P.3d 337.

{14}    We have addressed the requirements of Section 66-8-124(A) in *State v. Archuleta*, 1994-NMCA-072, 118 N.M. 160, 879 P.2d 792. In that case, the defendant contended that his traffic citation should have been dismissed because the officer making the stop was not in uniform. *Id.* ¶ 1. When he engaged the emergency equipment on his police car to stop the defendant, the officer was off-duty and wearing civilian clothes. *Id.* ¶ 2. Before approaching the defendant, the officer put on a police department windbreaker with a police department cloth shield and the State of New Mexico emblem. *Id.* We noted in *Archuleta* that the intent of the Legislature in requiring the officer making a traffic stop to wear a uniform that plainly indicated the officer's status "was to enable the motorist to be certain that the officer" making the stop "is, in fact, a police officer." *Id.* ¶ 9. We adopted alternative tests to determine whether an officer is "in uniform" for the purposes of Section 66-8-124(A): an objective one—"whether there are sufficient indicia that would permit a reasonable person to believe the person purporting to be a peace officer is, in fact, who he claims to be"; and a subjective one—"whether the person stopped and cited either personally

5

knows the officer or has information that should cause him [or her] to believe the person making the stop is an officer with official status." *Archuleta*, 1994-NMCA-072, ¶ 11. Defendant does not dispute that Officer Vigil was wearing his Tesuque Pueblo Police Department uniform at the time of the arrest. A reasonable person would thus believe that Officer Vigil was a peace officer, which is sufficient to satisfy the requirement that the arresting officer be in uniform.

**{15}** We additionally observed in *Archuleta* that the Legislature had amended Section 66-8-124 in 1968 in order to recognize modern practices with respect to police uniforms. *Id.* ¶ 10. Likewise, we do not believe that the Legislature intended to restrict the ability of cross-commissioned officers to perform their dual responsibilities. The purpose of cross-commissioning law enforcement officers is to promote a functional law enforcement process across jurisdictional boundaries. *See* Note, *Intergovernmental Compacts in Native American Law: Models for Expanded Usage*, 112 Harv. L. Rev. 922, 927 (1999) (observing that "numerous states and tribes have responded to the common need for effective law enforcement by developing cross-deputization" and other agreements). It would be absurd to expect that a cross-commissioned officer with authority in two jurisdictions would need to change uniforms when the officer needs to make a traffic stop or an arrest and is wearing the uniform of the other jurisdiction. *See State v. Davis*, 2003-NMSC-022, ¶ 13, 134 N.M. 172, 74 P.3d 1064 (stating that we do not construe statutes in a manner leading to absurd results).

**{16}** We reach the same result with respect to Officer Vigil's salary. While, as Defendant argues, Section 66-8-124(A) and Section 66-8-125(C) grant the authority to arrest to "a commissioned, salaried peace officer" and "New Mexico state police, sheriffs and their salaried deputies, and members of any municipal police force" respectively, neither section requires the officer's salary be from the authority cross-commissioning the officer. For the purposes of Section 66-8-124(A), Officer Vigil was a "salaried peace officer" of the Tesuque Pueblo. For Section 66-8-125(C), the Tesuque Pueblo Police Department is comparable to a municipal police force. *See* N.M. Att'y Gen. Op. 57-83 (treating similarly municipalities and the Navajo Nation for purposes of commissions as deputy sheriffs under New Mexico law). Indeed, the source of an officer's salary, although administratively significant, is not relevant to the purposes of cross-commissioning law enforcement officers to jointly perform law enforcement responsibilities. *Cf. Archuleta*, 1994-NMCA-072, ¶¶ 9, 10 (stating that "[i]t seems clear enough that the intention of the [L]egislature in requiring the officer to wear a uniform plainly indicating his official status was to enable the motorist to be certain that the officer who stops him is, in fact, a police officer"). And the fact that Santa Fe County did not also provide Officer Vigil with a salary, above and beyond the salary he received from the Tesuque Pueblo Police Department, has no bearing on whether Officer Vigil was properly cross-commissioned. *Cf.* § 4-41-10 (stating, after authorizing sheriffs to appoint special deputies, that "[t]here shall be no additional fees or per diem paid by the counties for any additional deputies other than as provided by law"). Moreover, it would be absurd to require the salary of a cross-commissioned officer to correspond to the authority the officer is exercising at the time of a traffic stop or arrest.

6

**{17}** Third, Defendant asserts that Officer Vigil was not authorized to carry a concealed weapon because he was not a "fully certified or full-time certified sheriff[] deput[y]." However, Officer Vigil was independently authorized to carry his concealed weapon in connection with his job as a Tesuque tribal police officer. If Officer Vigil had not already been a commissioned police officer with another agency or was not otherwise entitled to carry a concealed weapon, perhaps the issue might have bearing on this case. As it is, the issue of whether Officer Vigil carried a concealed weapon does not appear to be relevant to the issues in this case and does not provide information necessary to determine whether Officer Vigil was properly cross-commissioned as a special deputy.

### *State v. Slayton* **and** *State v. Bricker*

**{18}** Because Defendant extensively relies on *Slayton*, 2009-NMSC-054, and *State v. Bricker*, 2006-NMCA-052, 139 N.M. 513, 134 P.3d 800, to argue that Officer Vigil did not have the authority to arrest Defendant for DWI because Officer Vigil was not a "commissioned peace officer", we take the opportunity to explain why those cases do not bear on this appeal.

**{19}** The issue in *Slayton* was different from the issue in this case. At issue here is whether a cross-commissioning was effective; in *Slayton*, the issue was whether a police service aide was commissioned at all or had authority to make an arrest. *See* 2009-NMSC-054, ¶¶ 1, 12, 15. Our Supreme Court held in *Slayton* that the police service aide was not commissioned and was not authorized to make a misdemeanor arrest under the Motor Vehicle Code. *Id.* ¶ 17. Whether a police service aide is commissioned is not relevant to this case. In *Bricker*, the custodial arrest of the defendant was unlawful because the defendant should have been issued a summons and released. 2006-NMCA-052, ¶ 14; *see Slayton*, 2009-NMSC-054, ¶ 28. At issue in *Bricker* was whether the unlawful custodial arrest violated either the New Mexico or United States Constitutions, which would require suppression of evidence obtained consequent to the arrest. 2006-NMCA-052, ¶ 14. Neither *Slayton* nor *Bricker* speaks to whether Officer Vigil was properly cross-commissioned or, if cross-commissioned, the limits of his authority.

### COMPENSATION FOR DWI ARRESTS

**{20}** The second issue Defendant raises on appeal is whether Defendant was entitled to a defense under Section 66-8-137(B) because Officer Vigil "was working under a grant that targets the motoring public[, and which] has the effect of incentivizing the officers to increase their rate of pay[.]" Defendant concludes that Officer Vigil's conduct in making efforts to maintain the grant "was grounds for an acquittal under the statute and [Defendant] should have been found not guilty."

### The Grant: A Portion of Officer Vigil's Compensation

**{21}** The underlying facts regarding the grant, pursuant to which Officer Vigil received

7

a portion of his pay, are undisputed, although the characterizations of those facts differ. Officer Vigil testified that he received a salary from the Tesuque Pueblo Police Department and that, as part of his job duties as a police officer, he was charged with arresting and convicting individuals for offenses that included DWI. The department received a grant from the Bureau of Indian Affairs for dedicated DWI police officers, which provided the salaries for traffic officers and overtime for other officers. Officer Vigil submitted monthly statistics as information that was used to apply for the grant. As a result of the department's receipt of the grant, Officer Vigil's pay increased approximately two dollars per hour. His pay, however, did not fluctuate with the number of arrests he made. He was included within the grant at the time he arrested Defendant.

**{22}** The question for our review is whether the Tesuque Pueblo Police Department's receipt of the grant and Officer Vigil's resulting increase in compensation constituted the type of "compensation" depending upon arrest or conviction prohibited by Section 66-8-137(B). We review "factual findings under a substantial evidence standard, viewing the facts in the light most favorable to the prevailing party, and we review de novo whether the district court correctly applied the law to the facts." *Slayton*, 2009-NMSC-054, ¶ 11.

**Compensation Depending Upon Arrest or Conviction**

**{23}** Section 66-8-137(B) states:

> If any person is arrested or brought to trial for violation of the Motor Vehicle Code or other law, ordinance or regulation relating to motor vehicles punishable as a misdemeanor by any officer, agent or employee of any political subdivision, or before any municipal judge, whose compensation depends in any way upon the arrest or conviction of persons violating these laws, ordinances or regulations, the fact of such compensation or that the person making the arrest was not in uniform at the time is a defense to the charge.

**{24}** Defendant argues that he was entitled to an acquittal based on Section 66-8-137(B) because Officer Vigil's pay depended "in a way" on his arrest of persons violating the Motor Vehicle Code. In making this argument, Defendant does not rely on the fact that Officer Vigil received a salary for duties that included arresting and convicting individuals for offenses that included DWI. Defendant bases his defense on the increase in Officer Vigil's pay in connection with the grant in which the department was obligated to report the number of automobile accidents investigated and DWI arrests made. According to Defendant, the consequence of the grant was that Officer Vigil's compensation "in a way" depended on his arrests and convictions.

**{25}** The question presented by Section 66-8-137(B) ultimately is, for what did Officer Vigil receive his compensation. If Officer Vigil received any compensation for arresting or convicting individuals for violations under the Motor Vehicle Code or other law, ordinance,

or regulation relating to motor vehicles punishable as a misdemeanor, or if he received any compensation for increasing his arrests or convictions for such violations, Defendant would be entitled to the defense under Section 66-8-137(B). However, none of these circumstances appears to be the case here.

**{26}** As stated by Defendant, "[t]o receive the money, the officers turn in to the police captain information on numbers of arrests and citations, the number of DWI arrests, and the grant writers know the department is compliant because of the statistics and number of arrests." In his reply brief, Defendant reiterates that "[the] Tesuque [Pueblo Police Department] had to submit enforcement statistics to keep [the grant], this is clear." In other words, according to Defendant, to be entitled to the grant, all that appears to be required is that the Tesuque Pueblo Police Department turn in data. Defendant has not pointed to anything in the record to indicate that Officer Vigil was required to actually arrest or convict a certain number of individuals in order for the department to be eligible for the grant, that Officer Vigil was required to meet certain quotas to be eligible for the grant, or that Officer Vigil's pay was linked to the number of arrests or convictions. Rather, Officer Vigil's pay increased because he agreed to report statistics. The mere fact that Officer Vigil's pay increased pursuant to a grant that was given to the department because Officer Vigil, presumably among others, *reported* on the number of arrests and convictions does not trigger the Section 66-8-137(B) defense.

## CONCLUSION

**{27}** For the foregoing reasons, we hold that Defendant has not met his burden of demonstrating error and affirm the district court's conviction of Defendant. *See State v. Aragon*, 1999-NMCA-060, ¶ 10, 127 N.M. 393, 981 P.2d 1211 (recognizing that there is a presumption of correctness in the rulings of the trial court, and the party claiming error bears the burden of showing such error). We affirm Defendant's conviction for aggravated DWI, first offense, contrary to Section 66-8-102.

**{28}  IT IS SO ORDERED.**

_____
**JAMES J. WECHSLER, Judge**


**WE CONCUR:**

_____
**JONATHAN B. SUTIN, Judge**


_____
**J. MILES HANISEE, Judge**

9